**FIREMEN'S INSURANCE COMPANY OF WASHINGTON, Plaintiff,**

v.

**Walter E. WASHINGTON et al., Defendants.**

**Civ. A. No. 1027-71.**

United States District Court, District of Columbia.

Oct. 18, 1971.

**952**

James Brent Clarke, Jr., Washington, D. C., for plaintiff.

Thomas R. Nedrich, Asst. Corp. Counsel, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff brings this action to declare two of seven insurance regulations passed by the District of Columbia City Council illegal and to enjoin any action to enforce those regulations. On October 8, 1971 this matter came on for hearing before the Court on plaintiff's motion for summary judgment and the motion of all defendants for judgment on the pleadings.

Plaintiff is a domestic stock insurance company organized in 1837 and authorized under the laws of the District of Columbia to write fire and property insurance. Plaintiff is headquartered in the District and derives a substantial portion of its premium volume from policies written on property located within the District of Columbia.

Defendant Walter E. Washington is the Commissioner ("Mayor") of the District of Columbia and defendant Edward P. Lombard is the Superintendent of Insurance of the District of Columbia. Defendants Hahn, Tucker, Anderson, Daugherty, Haywood, Moore, Robinson, and Veasey were members of the District of Columbia City Council when the regulations were passed.

The regulations at issue here, numbered 71–8 and 71–13, are designed to prohibit geographic discrimination and arbitrary cancellation of policies within the District. The City Council passed these regulations pursuant to its authority to make rules and regulations to protect the health, safety, welfare, property, and well-being of the public, i. e. the general police power.

Regulations 71–8 and 71–13 were adopted by the City Council on March 2, 1971 and presented to Commissioner Washington the following day. The Commissioner neither approved nor disapproved the regulations within a ten-day period after they were presented to him and they became law on March 13, 1971 under the provisions of Section 406(c) of Reorganization Plan Number 3 of 1967. 1 D.C. Code Appendix (Supp. IV, 1971).

Regulation 71–8 provides in pertinent part as follows:

*Section 1. Geographic Discrimination.*

(a) No insurer, policy-writing agent, soliciting agent, broker, or salaried company employee shall decline to insure or to renew contracts of insurance because of the geographic area within the District of Columbia wherein is located the subject of the risk or the applicant's or insured's address.

(b) The prohibition contained in subsection (a) shall not act to prevent an insurer, agent, broker, or company employee from declining to issue contracts of fire or property insurance due to a determination, after on-site inspection and written report, that the condition of the property proposed to be insured does not meet applicable underwriting standards, provided that an applicant for such insurance shall be furnished a statement describing such improvements as are necessary to bring said property into conformity with applicable underwriting standards.

(c) The prohibition contained in subsection (a) shall not act to prevent an insurer, agent, broker, or company employee from declining to issue contracts for fire or property insurance due to a determination that the property proposed to be insured will cause, due to its geographic location, a concentration of liability which will exceed reasonable underwriting standards based upon actual properties then insured, and, either (i) excessive loss experience or (ii) potential excessive loss experience within such geographical area, provided that a copy of the underwriting standard shall be furnished to the applicant for insurance, if denied, and provided that the Superintendent of Insurance may within his

discretion rule on the reasonableness of the applicable underwriting standard, and provided further that in any action arising with respect to this section the burden of proof of reasonableness of the underwriting standard shall be on the proponent of the underwriting standard.

*Section 2. Enforcement*

Any insurer, policy-writing agent, soliciting agent, broker or salaried insurance company employee who violates any provision of this Regulation shall be imprisoned for not more than 10 days, or fined not more than $300, or both, for each such offense.

Regulation 71–13 provides in pertinent part as follows:

*Section 2. Permissible reasons for cancellation*

a. No automobile policy shall be cancelled, nor shall any cancellation be effective for any purpose, unless the insured has either:

1. refused or failed to pay a premium due under the terms of the policy; or

2. been subjected to suspension of his operator's permit at any time during the policy period if he is the named insured in an operator's policy; or

3. been subjected to suspension of the registration of a motor vehicle designated in his owner's or automobile policy at any time during the policy period, if as a result of such suspension no motor vehicle specifically described in such owner's policy is validly registered; or

4. made a material and willful misstatement or omission of fact to the insurer or its employees, agents or brokers in connection with any application to or claim against, such insurer; or

5. the motor vehicle or other interest of the insured shall have been transferred to a person other than the insured or beneficiary, unless the transfer is permissible un-

der the terms of the policy, or unless the motor vehicle, interest or use thereof shall have materially changed with respect to its insurability.

b. No other policy shall be cancelled nor shall such cancellation be effective for any purpose, unless either:

1. the insured has refused or failed to pay a premium due under the terms of the policy; or

2. the insured has made a material and willful misstatement or omission of fact to the insurer or its employees, agents, or brokers in connection with any application to or claim against such insurer; or

3. the property or other interest of the insured shall have been transferred to a person other than the insured or beneficiary, unless the transfer is permissible under the terms of the policy, or unless the property, interest or use thereof shall have materially changed with respect to its insurability.

*Section 8. Enforcement*

Any insurer, policy-writing agent, soliciting agent, broker or salaried insurance company employee who violates any provision of this Regulation shall be imprisoned for not more than 10 days or fined not more than $300 or both, for each such offense.

Plaintiff contends that in passing those regulations the City Council exceeded its statutory and regulatory authority, is attempting to regulate in a field preempted by Congress, that the regulations conflict with provisions of the District of Columbia Insurance Code, and that they are violative of the Constitution in that legislative power over the District of Columbia is vested in Congress. Plaintiff also contends that the regulations impair its constitutional right to contract.

The question presented in this case is whether the regulation of the business of insurance within the District of Columbia by the City Council is a proper exercise of its general police power. More specifically, whether the two regu-

lations at issue here may be promulgated under that police power.

Congress authorized the Commissioners of the District of Columbia to make and enforce reasonable and usual police regulations as they may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District. D.C.Code § 1–226 (1967). Section 402(4) of Reorganization Plan No. 3, *supra*, transferred that function to the City Council subject to Section 406, which relates to the veto power of the Commissioner. The City Council's police regulatory power under Section 1–226 remains the same as that possessed by the Commissioners prior to the Reorganization Plan. In passing the regulations prohibiting geographic discrimination and arbitrary cancellation the City Council expressly relied on its Section 1–226 power.

■■ The ultimate legislative power over the District of Columbia resides in the Congress. District of Columbia v. John R. Thompson Co., Inc., 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953). Congress has established a relationship with the District comparable to that existing between municipalities and their parent states and may delegate the exercise of regulatory powers, as deemed necessary or desirable, to the District of Columbia. Maryland and District of Columbia Rifle and Pistol Ass'n., Inc. v. Washington, 442 F.2d 123 (D.C.Cir. 1971).

■■ Since the authority to make reasonable and usual police regulations was delegated to the District in 1892 that power has never been used to regulate in the insurance field. With the exception of City of Chicago v. Phoenix Ins. Co., 126 Ill. 276, 18 N.E. 668 (1888), no cases considering the application of municipal police power to the regulation of insurance have been found. That case struck down a municipal insurance tax on the ground that the state had occupied the field. It cannot be said, therefore, that the regulation of insurance is a "usual" or valid exercise of police power by a municipality, nor is it the "usual" exercise of that power by the municipal government of the District of Columbia.

In 1901 Congress enacted what is now known as the District of Columbia Insurance Code, D.C.Code tit. 35. The most recent legislative enactment by Congress concerning insurance in the District appears to be the District of Columbia Insurance Placement Act. D.C.Code §§ 35–1701 to 35–1711 (Supp. IV, 1971). Although the Insurance Code contains provisions delegating authority to regulate the insurance business to the local government, each is narrowly drawn and limited to a specific area in the insurance field. Section 35–102 authorizes such rules and regulations, not inconsistent with law, as to make the conduct of each company in the same line of insurance conform in doing business in the District. Cases in this jurisdiction dealing with regulatory power of the District have involved interpretations of specific rule-making authority granted in Title 35 and those grants of that power have been confined to the limits expressly delegated. Metropolitan Police Retiring Ass'n. v. Tobriner, 113 U.S.App. D.C. 168, 306 F.2d 775 (1962); Atlantic Ins. Agency v. Jordan, 97 U.S.App.D.C. 184, 229 F.2d 758 (1955); Hutchins Mut. Ins. Co. of District of Columbia v. Hazen, 70 App.D.C. 174, 105 F.2d 53 (1939); District of Columbia Insurance Placement Facility v. Washington, 269 A.2d 45 (D.C.Ct.App.1970). The Insurance Code nowhere expressly grants the authority to the District to enact regulations such as those at issue here.

Had Congress intended to extend the police power under Section 1–226 to the insurance field, the delegations of limited and specific regulatory authority contained in the Insurance Code would not have been necessary.

In the Insurance Placement Act, Congress provided for the equitable distribution of the responsibility for insuring qualified property within the District of Columbia for which insurance cannot be obtained through the normal market and

established a joint underwriting association to provide for reinsuring basic property insurance without regard to "environmental hazards." Environmental hazards are defined in the Act as those conditions which might give rise to a loss but which are beyond the control of the property owner.

Regulations 71–8 and 71–13 would prohibit plaintiff, and other insurance companies doing business in the District, from taking into account, in determining whether to issue, cancel or renew insurance policies, certain underwriting considerations. Plaintiff and other insurers would be compelled to issue or continue coverage on properties deemed to be high risks under those underwriting standards.

Regulation 71–8 has been interpreted by the Superintendent of Insurance as prohibiting (except to the limited extent permitted by subsection 1(c) of the regulation) all considerations over which the insured has no control. The effect of that regulation, as interpreted by the Superintendent, is to prohibit insurance companies from taking into account for underwriting purposes the geographic location of the risk and other relevant factors, such as the incidence of arson in the area. The only exception in the regulation is where a single insurer has a concentration of liability in a particular area.

The District of Columbia Insurance Placement Facility, formed pursuant to the Insurance Placement Act, has the statutory responsibility of providing property insurance where it is not otherwise available in the normal market, as in the case of property located in high crime areas. Congress also provided that the Placement Facility, formed by all insurers writing property insurance in the District, would submit proposed rules and regulations for its operation to the Commissioner and that he could approve, disapprove, or amend those rules under certain conditions. D.C.Code § 35–1704 (Supp. IV, 1971). The Placement Facility has adopted detailed rules to implement the Insurance Placement Act.

Those rules provide that the Placement Facility shall not decline a risk for neighborhood or area location or environmental hazard beyond the control of the property owner.

The District of Columbia Insurance Placement Facility began business on October 1, 1968 and losses from insurance arranged through the Facility have been ratably divided among participating insurers since that time.

■ The City Council's "geographic discrimination" regulation and the Placement Act both seek to regulate the same type of high risk coverage. The Council has determined that individual insurers may not, with limited exception, consider matters over which the insured has no control in making the determination of whether or not to insure. Prior to the regulation insurers did consider such factors. This expansion of risk is precisely what the Placement Act seeks to govern by apportioning such risk among all participating carriers. Regulation 71–8 would narrow the market which Congress intended all carriers to share. There is no room for local regulation where Congress has so fully dealt with the subject. Maryland and District of Columbia Rifle and Pistol Ass'n., Inc. v. Washington, *supra*.

Despite the Council's laudable purpose, its determination that a need exists for such regulation cannot provide authority to promulgate it when the power has been retained by Congress.

After oral argument by counsel and careful examination of plaintiff's motion for summary judgment, defendants' motion for judgment on the pleadings, and supporting points and authorities, the Court finds that:

1. There is no genuine issue as to any material fact.

2. The District of Columbia had no authority to pass Regulations 71–8 and 71–13.

3. Regulation of the insurance industry is not a valid exercise of the general and usual police power.

Accordingly, it is

adjudged that plaintiff's motion for summary judgment be and it hereby is granted, and it is further

Adjudged that defendants' motion for judgment on the pleadings be and it hereby is denied.

This Memorandum Opinion will constitute findings of fact and conclusions of law. Counsel for plaintiff will submit an appropriate order.