**STATE ex rel. FARMER, Superintendent of Insurance, etc., Respondent,**

v.

**MONSANTO COMPANY, a corporation, Appellant.**

**No. 58310.**

Supreme Court of Missouri, Division No. 2.

Dec. 16, 1974.

**130**

Roberts P. Elam, St. Louis, for respondent; Neil N. Bernstein, Gen. Counsel, Div. of Insurance of Missouri, Jefferson City, of counsel.

Coburn, Croft, Shepherd & Herzog, Thomas L. Croft, John R. McFarland, St. Louis, Lewis, Rice, Tucker, Allen & Chubb, Robert S. Allen, St. Louis, for appellant.

Richard W. Duesenberg, Director of Law, Monsanto Textiles Company, St. Louis, Associate Counsel, for appellant.

Joseph L. Racine, St. Louis, Atty., St. Louis Regional Commerce and Growth Association, Mahlon R. Aldridge, III, Jefferson City, Gen. Counsel, Missouri Chamber of Commerce, Bartley, Goffstein, Bollato & Lange, William H. Bartley, Jerome A. Diekemper, Clayton, for Amicus Curiae, Greater St. Louis Labor Council, AFL–CIO.

John R. Tadlock, Gen. Counsel, James J. Cronin, Associate Gen. Counsel, Oil, Chemical & Atomic Workers Union, AFL–CIO, Denver, Colo., Robert M. Young, Asst. Legal Counsel, International Chemical Workers Union, Akron, Ohio, Harris, Paskal, Edwards & Olian, Raymond I. Harris, Richard H. Edwards of Paskal, Edwards, Olian & Hadican, Clayton, for Amicus Curiae, Carpenters District Council of Greater St. Louis, Carpenters District Council of St. Louis Shops and Mills Health and Welfare Fund, Cement Masons Union Local No. 527, Cement Masons Union Local No. 527 Pension Fund, and Cement Masons Union Local No. 527 Health and Welfare Fund.

STOCKARD, Commissioner.

In this suit the Superintendent of Insurance for the State of Missouri sought an injunction to prohibit Monsanto Company from paying sickness and disability benefits directly to its employees on the ground that such payments constitute the transaction in Missouri of "insurance business" in violation of §§ 375.161 and 375.310, RSMo 1969, V.A.M.S. The trial court entered the requested injunction, but stayed the enforcement thereof pending this appeal. We reverse.

Monsanto is a Delaware Corporation, qualified and authorized to do business in Missouri. It is engaged in manufacturing and selling a variety of chemical, petroleum, plastic, fiber and electronic products. It is not qualified or authorized to do or transact insurance business in Missouri.

For many years Monsanto has provided a program of employee benefits, frequently referred to as "fringe benefits." As a part of that program Monsanto maintained a "Sickness and Medical Benefits Plan," under which it provided for payments to employees for temporary disability, and for reimbursement for hospital, medical and surgical expenses incurred by the employees and their dependents.

Metropolitan Life Insurance Company (hereafter referred to as "Metropolitan") is a mutual insurance company. Originally, the payments of all benefits under the Monsanto Sickness and Medical Benefits Plan were paid by Metropolitan pursuant to a group policy of insurance issued by it to Monsanto. Each employee of Monsanto covered by the group policy was issued a certificate which recited in detail the benefits.

Participation in the Sickness and Medical Benefits Plan originally was optional with each employee, and each participating employee was required to contribute, by way of payroll deduction, toward the cost of the insurance benefits. Monsanto employees do not now contribute to the plan.

On July 1, 1963 Metropolitan submitted to the Superintendent of Insurance for approval a form of agreement, designated as "Form G.9100," which provided that Metropolitan would pay only those group policy benefits which were in excess of a stated amount arrived at by a described formula, and that benefits up to that stated amount would be paid by some other medium or media. That form was approved, and in the letter of approval it was stated that "This approval of Form G.9100 is not to be construed as approval of the other medium referred to therein, but is based upon the premise that said 'other medium,' in whatever form or manner, is authorized or permitted to provide the benefits referred to therein * * *." Effective January 1, 1964, Monsanto and Metropolitan entered into an agreement incorporating Form G.9100 as an amendment to the group policy. Paragraph 8 of Form G.9100 provides that Metropolitan "shall have the right to make final determination of the amount of benefits, if any, to which an Employee shall be entitled in any claim for benefits accruing under the Plan during the period in which the Insurance Company is not obligated to pay benefits pursuant to this agreement, and the Employer [Monsanto] agrees to cause the other Medium [Monsanto] to follow such determination in paying such benefits pursuant to the Plan."

Metropolitan subsequently issued a "Certificate Rider" amending the Group Insurance Certificates previously issued to Monsanto's employees, which contained the statement: "In accordance with the provision of the Group Policy, the Employee's certificate is hereby amended to provide that, instead of being liable for payment of all Sickness and Medical Benefits as described in the certificate, the Insurance Company's liability is limited to the payment of such benefits to the extent they are not payable or caused to be paid by Monsanto Company. When the Insurance Company is not liable, payment of benefits will be made under the Monsanto Sickness and Medical Benefit Plan. The Group Policy, as amended January 1, 1964, specifies the time when and the circumstances under which the Insurance Company is obligated to pay benefits."

Prior to January 1, 1964, all claims paid under the Sickness and Medical Benefits Plan were paid by draft drawn by Monsanto upon Metropolitan through the latter's bank. After that date all such claims payable by the "other medium" have been paid by Monsanto by its check drawn on its bank account.

Monsanto has entered into a written agreement with the labor organizations representing its hourly paid employees in which the Sickness and Medical Benefits Plan is a part, and which also provides that Monsanto "reserves the right to provide for the benefit of the Plan through an insurance policy or policies with the insurance company underwriting the prior plan or with another insurance company or companies, or by such other method or methods as shall be determined by the Corporation."

Section 375.161, RSMo 1969, V.A.M.S., provides: "No company shall transact in this state any insurance business unless it shall first procure from the superintendent [of insurance] a certificate * * * authorizing it to do business"

* * * ."

Section 375.310, RSMo 1969, V.A.M.S., provides: "Any association of individuals, and any corporation transacting in this state any insurance business, without being authorized by the superintendent * * * so to do * * * shall be subject to suit by the superintendent who may institute proceedings * * * to enjoin said company from the further transaction of its business * * *."

The essential question is whether the payment by Monsanto to its employees of the benefits provided for in its Sickness

and Medical Benefit Plan results in it "transacting * * * insurance business." We hold that it does not.

The term "insurance business" is not statutorily defined, but it is not the same as "insurance" or the word "business" would be meaningless. We must assume that the legislature intentionally added the word "business," and that the phrase is to be used in its usual and ordinary meaning.

We find no reported cases in this jurisdiction which have considered whether a sickness and medical plan such as that maintained by Monsanto, adopted by an employer for the exclusive benefit of its employees and their dependents, constitutes the transaction of "insurance business." However, texts and cases in other jurisdictions have considered closely related questions.

In 44 C.J.S. Insurance § 59, we find this general rule: "Whether a company is engaged in the insurance business depends * * * on the character of the business that it transacts, and whether that business constitutes an insurance business subject to regulation as such is determined by the usual course of the business, and whether the assumption of a risk, or some other matter to which it is related, is the principal object and purpose of the business." See also Vance, Handbook on the Law of Insurance, (3d ed.) P. 88. This court has defined the term "business" to be a " 'commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision.' " Suburbia Gardens Nursery, Inc. v. County of St. Louis, 377 S.W.2d 266 (Mo. banc 1964). In this case, Monsanto does exercise judgment but it does not purport to make insurance available to the public, and it is not in the business of attempting to make either a profit or accumulate a surplus from the operation of its Sickness and Medical Benefit Plan.

One of the most recent and leading cases is Mutual Life Ins. Co. v. New York State Tax Comm., 32 N.Y.2d 348, 345 N.Y.S.2d 475, 298 N.E.2d 632 (1973). In that case Mutual Life Insurance Company provided its employees and field agents benefits payable upon death, illness and disability. The expense of such benefits was allocated on a nonprofit basis, that is, by not making any provision for a surplus with respect to those benefits. The expense was borne principally by the employer as a part of its cost of doing its principal business. The New York statute imposed a tax on "all gross direct premiums" received by domestic life insurance corporations "for the privilege of exercising corporate franchises or for carrying on the business * * * within this state." The court stated that the question posed was "whether the costs of life and health insurance benefits for the employees of such a life insurance corporation, on a nonprofit and noncommercial basis, are taxable as premiums received within the sense of that statute." The court held: "[T]he tax is a corporate franchise fee imposed upon insurance companies for the privilege of doing buisness. Quite obviously, the petitioner's program, pursuant to which it grants insurance benefits to its employees, is not the doing of an insurance business under its franchise and therefore, is not subject to the tax imposed [by the statute]. In other words, the coverage of the petitioner's own employees is not the result of the solicitation of business or of the petitioner's holding itself out or doing business as a commercial insurer. The expense of the program is calculated without provision for profit. These factors but demonstrate and confirm that the employee-benefit program is not part of its ordinary course of business as a franchise insurer." The court then commented that "The relationship involved, then, is not commercial, nor one of seller and purchaser, with profit or contribution to surplus accruing to the former; rather, it is an incident of its employer-employee relationship, no different from that of any other employer not subject to the premium tax. Concededly, noninsurance company employers who provide insurance benefits for

their employees similar to those provided by the petitioner are not subject to the taxing provision of section 187. *Such employer-sponsored programs do not constitute the doing of an insurance business within the meaning of the statute, * * *."* (Italics added).

Other cases which have considered this question, and have held that by providing employee benefits in the form of sickness and disability benefits an employer is not engaged in the transaction of "insurance business," include Danna v. Commissioner of Ins., 228 So.2d 708 (La.Ct. of App. 1969); California-Western States Life Ins. Co. v. State Bd. of Eq., 151 Cal.App.2d 559, 312 P.2d 19 (1957); State Tax Comm'n v. John Hancock Mutual Life Ins. Co., 341 Mass. 555, 170 N.E.2d 711 (1960); Williams v. Massachusetts Mutual Life Ins. Co., 221 Tenn. 508, 427 S.W.2d 845 (1968); Metropolitan Police Retiring Ass'n Inc. v. Tobriner, 113 U.S.App.D.C. 168, 306 F.2d 775 (1962). It is true that all of these cases pertained to the issue of the attempted assessment of premium or franchise taxes, but the statute in each case required the payment of such tax on premiums received in the transaction of "insurance business," and in each case it was held that for an employer to provide such benefits did not constitute the transaction of insurance business. We agree with the reasoning and the result of those cases, and the principle there announced is applicable to this case. See also, West & Co. of La., Inc. v. Sypes, 515 S.W.2d 635, (Ark.1974).

Because of the result we have reached, we need not consider the constitutional or public policy arguments of Monsanto, or the contentions pertaining to the pre-emption doctrine or the application or effect of §§ 32 and 34 of Senate Bill 3, 1973, which amended §§ 354.165 and 354.175, RSMo 1969, V.A.M.S., effective after the injunction in this case was decreed.

The injunction was improperly entered by the trial court, and the judgment is reversed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

All of the Judges concur.