394 So.2d 842 (1981)
George Deloyce BLEWER, Plaintiff-Appellee,
v.
CONTINENTAL ASSURANCE COMPANY and The State Employees Group Benefits Program, Defendants-Appellants.
No. 8010.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1981.
*843 Tommy D. Teague, Baton Rouge, for defendants-appellants.
Watson, Murchison, Crews, Arthur & Corkern by Wm. P. Crews, Jr., Natchitoches, for plaintiff-appellee.
Before FORET, SWIFT and DOUCET, JJ.
FORET, Judge.
George Deloyce Blewer (Plaintiff) brought this action under LSA-R.S. 22:657 to recover penalties and attorney's fees as provided for in that statute. The Continental Assurance Company (Continental) and The State Employees Group Benefits Program (the Program) were made defendants.
The trial court gave judgment in favor of plaintiff, and defendants appealed. Defendants-appellants present three issues for determination:
(1) Whether LSA-R.S. 22:657 is applicable under the facts and circumstances of this case;
(2) Whether the delay in the payment of plaintiff's claims was unreasonable; and, alternatively,
(3) Whether the trial court's award of attorney's fees was excessive.

FACTS
Plaintiff sustained serious injury on September 1, 1979, when a shotgun accidentally discharged, wounding his left hand. He was initially treated at Natchitoches Parish Hospital and later transferred to Schumpert Memorial Medical Center in Shreveport, Louisiana.
Elizabeth B. Blewer, plaintiff's wife, is a state employee, and plaintiff is a covered dependent under the program. Plaintiff began submitting various claim forms to the Program on September 27, 1979. He failed to receive any satisfactory response to his claim and engaged legal counsel who made written demand on defendants. Defendants *844 replied by letter dated January 16, 1980, stating that, "a draft has been printed" and "will be mailed within the next two days". However, Elizabeth Blewer subsequently received a letter from the defendants dated January 21, 1980, in which it was stated that "no benefits are payable" on plaintiff's claim for medical expenses incurred at Schumpert Memorial Medical Center.
Plaintiff then filed this action on January 29, 1980, alleging that defendants had violated the provisions of LSA-R.S. 22:657 by arbitrarily and capriciously failing to pay his valid claim within thirty days from the date upon which written notice and proof of claim had been submitted. The parties stipulated that the total sum of claims paid after the thirty-day time period had expired was $9,136.20. It was further stipulated that all eligible benefits were paid before trial.
The trial of this action was held on April 21, 1980, and the trial court rendered judgment in favor of plaintiff and against the Program on May 16, 1980. The judgment awarded plaintiff $9,136.20 in penalties and $1,000.00 in attorney's fees and denied all demands against Continental. Defendants were granted a suspensive appeal from that judgment.[1]
APPLICABILITY OF LSA-R.S. 22:657
The first issue is whether LSA-R.S. 22:657 was applicable to the Program, a state agency, at the time this action arose.
The Program is a system of self insurance set up by the State to provide insurance coverage to certain of its employees and their dependents. The Program is administered by Continental under a contract with the State.
Appellants argue that the trial court erred in finding that LSA-R.S. 22:657 was applicable in this action. It is appellants' contention that LSA-R.S. 22:657 was inapplicable to the Program prior to its amendment by Acts 1979, # 240 § 1, effective September 7, 1979. LSA-R.S. 22:657 prior to Act 240 of 1979, read:
"§ 657. Payments of claims; health and accident policies; penalties
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases.
B. All claims for accidental death arising under the terms of health and accident contracts where such contracts insure against accidental death shall be settled by the insurer within sixty days of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six percent per annum from date of receipt of due proof of death by the insurer until paid." (Emphasis provided.)
Appellants argue that by the very terms of the statute, the penalty provision applies only to insurers. Appellants then cite the definition of insurer found in LSA-R.S. 22:5(2). This provision reads:

*845 "(2) "Insurer" includes every person engaged in the business of making contracts of insurance, other than a fraternal benefit society. A reciprocal, an inter-insurance exchange or a Lloyds organization is an "insurer". Any person who provides an employee benefit trust as specified in R.S. 22:5(1) is an insurer."
Appellants also cite Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978), a case decided before LSA-R.S. 22:657 was amended in 1979, where our Supreme Court had the occasion to interpret and apply LSA-R.S. 22:5(2) and stated on page 1279 that:
"Abbott is not `engaged in the business of making contracts of insurance' merely because it provides, through a trust, a long-term disability plan for its employees. Abbott does not offer the program primarily for profit, nor is the coverage of its own employees the result of advertisement or solicitation of insurance business from the general public or of holding itself out or doing business as a commercial insurer. See Metropolitan Police Retiring Assoc., Inc., 113 U.S.App.D.C. 168, 306 F.2d 775 (1962); Danna v. Comm'r of Ins., 228 So.2d 708 (La.App. 1st Cir. 1969); State ex rel. Farmer v. Monsanto Co., 517 S.W.2d 129 (Mo.1974); Mutual Life Ins. Co. of N. Y. v. N. Y. State Tax Comm., 32 N.Y.2d 348, 345 N.Y.S.2d 475, 298 N.E.2d 632 (1973). Accordingly, Abbott is not an `insurer' subject to the Insurance Code; therefore, La.R.S. 22:657 A is not applicable to Abbott. The courts below correctly denied penalties and attorney fees in the instant case."
Similarly, appellants argue that the State Employees Group Benefits Program of the State of Louisiana, is a self-insured program offered as a fringe benefit to state employees and an employee's coverage arises from his employment status and not from an independently secured contract of insurance. Therefore, the State of Louisiana is not a commercial insurer and cannot be subject to the penalty and attorney's fees provisions of LSA-R.S. 22:657, as it read prior to Act 240 of 1979.
Plaintiff-appellee argues to the contrary that LSA-R.S. 22:657 as amended by Act 240 of 1979 is applicable to the Program by virtue of that amendment. LSA-R.S. 22:657 was amended by Act 240 of 1979 to add Subsection C which reads:
"§ 657. Payment of claims; health and accident policies; penalties; self-insurers
[See main volume for text of A and B]
C. Any person, partnership, corporation or other organization, or the State of Louisiana which provides or contracts to provide health and accident benefit coverage as a self-insurer for his or its employees, stockholders or any other persons, shall be subject to the provisions of this Section, including the provisions relating to penalties and attorney fees, without regard to whether the person or organization is a commercial insurer provided, however, this Section shall not apply to collectively bargained union welfare plans other than health and accident plans."
This subsection clearly subjects the Program to LSA-R.S. 22:657(A) and the delays and penalties provided therein. However, appellants argue that since plaintiff's claim arose on September 1, 1979, the date he was injured, to apply LSA-R.S. 22:657 as amended by Act 240 of 1979, effective September 7, 1979, would be to give a retroactive effect to the substantive change in the law. We disagree.
We agree with the argument of plaintiff-appellee that his cause of action for penalties and attorney's fees arose only after the appellants failed to make payment on his claims within the thirty-day time period. Plaintiff-appellee brought this action based on the provisions of LSA-R.S. 22:657 and it is that statute which gave rise to his cause of action. The plaintiff-appellee submitted his claim for medical expenses incurred at Schumpert Memorial Medical Center to the Program on October 5, 1979. His cause of action under LSA-R.S. 22:657 against the Program for penalties and attorney's fees *846 came into existence thirty days after October 5, 1979, when the Program failed to pay his claim.
We find that plaintiff-appellee's cause of action arose after the amendment to LSA-R.S. 22:657 by Acts 240 of 1979 had become effective and that this provision, as amended, applies to the action before us.

DELAY IN PAYMENT OF PLAINTIFF'S CLAIM
The second issue we address is whether appellants' delay in the payment of benefits to plaintiff on his claims was based on just and reasonable grounds such as would put a reasonable and prudent businessman on his guard. LSA-R.S. 22:657 (A).
Appellants argue that no benefits are payable under the Program for intentional self-inflicted injuries, injuries sustained in an aggressor role or on any attempt at suicide, and that any gunshot wound is automatically suspect under this provision.
On October 5, 1979, six days after submission of the claim form, the Program requested a copy of the police report on this incident. This is normal procedure when any claim for a gunshot wound is received for payment. No report was forthcoming, and on three other occasions, through January 30, 1980, a police report was requested. It was only upon the trial of this matter that appellants learned that no police report had been filed.
Appellants contend that the facts of this case were such as to put a reasonable and prudent businessman on his guard concerning whether petitioner was injured while in an aggressor role or whether the injury was self-inflicted, and that the delay in payment was justified. We disagree.
We adopt the findings of the trial court on this issue as expressed in its written reasons for judgment. These findings were:
"In brief, counsel for Insurer states that the representatives of Insurer were excused from the 30 day rule because Blewer's injuries were caused by a gun shot. That accordingly, Insurer had to determine if Blewer's wound was the result of "Intentional self-inflicted injuries; injuries sustained while in an aggressor role or an attempted suicide."
"Counsel stated the Insurer's representatives asked for a "police report" which was non-existant [sic]. As of September 4, 1979, a "statement of claim" was signed by Blewer and his wife, Mrs. Elizabeth F. Blewer, stating: "Accidental self-inflicted gun shot while hunting." With this knowledge it would have been a simple task to confirm. Insurer offered no evidence of the acts done to secure confirmation of how Blewer was injured. This Court finds it difficult to imagine a more unreasonable and unjust handling of this a major claim. The Insurer's representatives were grossly negligent and arbitrary in processing these claims. Their correspondence shows lack of communication between personnel responsible for the expeditiously [sic] paying of these claims. This is evident by the letter to counsel for Blewer that payment would be made within two days after January 16, 1980 and on January 21, 1980, a letter to Mrs. Blewer, wife of Blewer, that no claims would be honored.
"This Court is well aware of the fact that the above statute is penal in nature and must be strictly construed. But the most charitable approach in considering the Insurer's actions requires this Court to hold that such penalties are here applicable and are enforceable against the Insurer."
We find appellants' actions to be unreasonable and unjustified to the extent that the Program is subject to penalties provided for by LSA-R.S. 22:657 for failure to pay plaintiff's claim within the thirty-day period allowed by that statute.

ATTORNEY'S FEES
LSA-R.S. 22:657(A) clearly provides for an award of attorney's fees against an insurer who fails to comply with the terms of that statute.
Appellants argue that the award to plaintiff-appellee of $1,000.00 for attorney's fees *847 is excessive. They argue that no testimony was received at the trial court level regarding the time and effort of counsel in preparing this case. However, the appellants seem to overlook the fact, and the record of the minutes of court indicates, that the parties stipulated that no evidence would be required by the court and that the parties would defer to the court on this issue.
Plaintiff-appellee, on the other hand, argues that this Court should increase the award of attorney's fees by $750.00. However, plaintiff-appellee failed to appeal or answer the appeal on this issue as required by LSA-C.C.P. Article 2133 when a party desires to have a trial court judgment modified, revised, or reversed in part. Therefore, we affirm the trial court's award of $1,000.00 for attorney's fees to the plaintiff-appellee.

THE INSURER
The trial court rendered judgment against the Program, finding it to be the insurer under LSA-R.S. 22:657. It denied plaintiff's demands against Continental, finding it to be only the manager and service agent for the insurer. We affirm these findings.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of these proceedings, which amount to $279.77 are assessed against the State Employees Group Benefits Program.
AFFIRMED.
NOTES
[1] The record furnishes no explanation as to why Continental joined the Program in the motion for a suspensive appeal, inasmuch as the trial court judgment, while casting the Program in judgment, denied all of plaintiff's demands against Continental.