359 So.2d 1275 (1978)
Carrell KILLEBREW
v.
ABBOTT LABORATORIES.
No. 61338.
Supreme Court of Louisiana.
June 19, 1978.
*1276 Alvin R. Childress, III, New Orleans, for plaintiff-applicant.
Robert E. Leake, Jr., Hammett, Leake, Hammett, Hulse & Nelson, New Orleans, for defendant-respondent.
MARCUS, Justice.
Carrell Killebrew instituted this action against his former employer, Abbott Laboratories, for benefits under a long-term disability plan, provided by Abbott and administered through a trust for its employees, and for penalties and attorney fees under La.R.S. 22:657.
The disability plan contract allows payment of monthly benefits to age sixty-five but, under an exclusionary clause, provides that benefits will not be paid for any period of disability in excess of twenty-four months if the disability is "caused or contributed to by mental illness or functional nervous disorder. . . ." The contract also provides that benefits under the plan will be reduced by the amount of any federal social security payments received by the employee.
The trial judge found that the "overwhelming medical evidence compels the conclusion that plaintiff's disability is due to a functional nervous disorder. . . ." Accordingly, the trial judge limited plaintiff's benefits under the plan to twenty-four months, less social security benefits received and less credit for four months of benefits previously paid.[1] Penalties and attorney fees were not awarded. Plaintiff appealed.
Court of appeal affirmed the judgment of the trial court, agreeing that the medical evidence supported a finding that plaintiff had suffered a functional disability. The court found no merit to plaintiff's contention that the contract provision for reduction of benefits under the plan by the amount of federal social security payments received was unconscionable and acted as an assignment of future social security payments. Finally, the appeal court found that Abbott was not an "insurer"; therefore, La.R.S. 22:657, providing for penalties and attorney fees for arbitrary and capricious failure to pay claims arising under the terms of health and accident contracts, did not apply to Abbott.[2] On application of plaintiff, we granted certiorari to review the correctness of this decision.[3]
In January, 1969, plaintiff contracted viral encephalitis while employed by Abbott *1277 but, upon recovery, was able to maintain his position. In the latter half of 1969, plaintiff's duties with Abbott underwent a change. Previously, he held a promotional position, informing interns and residents of products available through Abbott. Thereafter, his position consisted of selling only hospital products and required contact with hospital personnel such as purchasing agents, pharmacists, and department heads. During the next several years, plaintiff suffered various physical ailments, including two hernias requiring corrective surgery, a urinary problem requiring surgery, gout, sinusitis, and a cardiac condition, none of which were disabling. He often experienced headaches and had difficulty maintaining a good relationship with his superiors at Abbott. Plaintiff was discharged by Abbott on February 20, 1973, because of insubordination and lack of performance. Plaintiff was forty-five years old at the time.
Through payroll deductions, plaintiff had participated in the long-term disability plan here at issue. He claimed disability payments to age sixty-five due to an alleged organic nervous disorder caused by the viral encephalitis in 1969. After receipt of four monthly benefits and denial of his claim for monthly benefits to age sixty-five, plaintiff filed this action.
The issues presented for our review are: (1) whether plaintiff's disability is organic, entitling him to monthly benefits to age sixty-five, or merely functional, limiting benefits to twenty-four months; (2) whether the provision in the disability plan permitting reduction of benefits by the amount of the federal social security payments received is unconscionable and acts as an assignment of future social security payments; and (3) whether Abbott is an "insurer" and, if so, liable for penalties and attorney fees under La.R.S. 22:657 for its alleged arbitrary and capricious failure to pay benefits under the disability plan.
We first address the issue concerning the nature of plaintiff's disability.
Medical evidence at trial consisted of the testimony of four medical experts. Dr. Paul F. Larson, a neurologist, first examined plaintiff in October, 1973. He explained an organic neurological disorder as an abnormality in the brain structure. He defined a functional neurological disorder as a disorder of the thinking process, despite a completely normal brain. Dr. Larson testified that the results of his neurological examination of plaintiff, including examination of the mental status, motor system, cranial nerves, sensory, and cerebellar systems, were all normal. He found no indication of an organic neurological disorder in plaintiff. The doctor opined that, although plaintiff had psychological problems, he suffered from a functional disability in 1973. Dr. Larson referred plaintiff for evaluation to Dr. Grad L. Flick, a psychologist.
Dr. Flick supervised neuropsychological testing of plaintiff in November, 1973. He testified: "[T]here was no obvious evidence of any organic brain disfunction. [Plaintiff's] performance was entirely within normal limits and in some cases he performed above average on some of the tests." He stated that plaintiff had difficulty in inter-personal relationships and revealed a personality pattern characterized by "a tendency to rationalize unemployment to physical illness." Dr. Flick further opined that plaintiff's personality pattern is not typical of that seen in organic disturbance such as encephalitis and that, whatever input forms his personality, his problems are in the personality area rather than the organic area.
Dr. Thomas Oelsner, an internist, examined plaintiff in January, 1976. He testified that the results of his neurological examination of plaintiff were entirely normal and that, from a physical standpoint, plaintiff seemed to be in excellent health. He found no evidence of any disease that would prevent plaintiff from performing work, nor any evidence of organic brain damage. Dr. Oelsner opined that plaintiff's disability had a functional basis.
*1278 Dr. Edward E. Thornhill, an internist, did not treat plaintiff for viral encephalitis in 1969 but became his physician shortly thereafter. Of the four medical experts who testified at trial, only Dr. Thornhill attributed plaintiff's disability to an organic disorder caused by viral encephalitis in 1969. He testified that he based his conclusion upon the fact that he knew plaintiff prior to 1969 and subsequently observed his "deterioration." Dr. Thornhill stated that the results of several brain scans on plaintiff produced normal results and that the results of several neurological examinations of plaintiff were normal, except for an indication of difficulty with concentration at times. He stated that he did not feel that neuropsychological tests were necessary.
After reviewing the record, we find, as did the courts below, that plaintiff's disability was caused by a functional nervous disorder. Accordingly, benefits due plaintiff under the disability plan were properly limited to a period of twenty-four months.
We also agree with the finding of the court of appeal that the provision in the disability plan permitting reduction of benefits by the amount of the federal social security payments received does not afford Abbott "an unconscionable advantage" and does not constitute an assignment of future social security payments.
Finally, we reach the issue of whether Abbott is liable for penalties and attorney fees for its alleged arbitrary and capricious failure to pay benefits under the disability plan.
At the outset, we note that in Louisiana punitive damages are not allowable unless it be for some particular wrong for which a statute expressly authorizes the imposition of some such penalty. McCoy v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383, cert. denied, 287 U.S. 661, 53 S.Ct. 220, 77 L.Ed. 570 (1932). It is also well recognized in the jurisprudence of this state that as a general rule attorney fees are not allowed except when authorized by statute or contract. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970); Hernandez v. Harson, on rehearing, 237 La. 389, 111 So.2d 320 (1959).
Plaintiff contends that Abbott is an "insurer" subject to the provisions of the Insurance Code (La.R.S. 22:1, et seq.) and is liable for penalties and attorney fees under La.R.S. 22:657 A for its arbitrary and capricious failure to pay benefits under the disability plan. We do not agree.
La.R.S. 22:657 A provides:
All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases. (Emphasis added.)
La.R.S. 22:5(2) provides:
In this Code, unless the context otherwise requires, the following definitions shall be applicable:
. . . . .
`Insurer' includes every person engaged in the business of making contracts of insurance, other than a fraternal benefit *1279 society. A reciprocal, an inter-insurance exchange or a Lloyds organization is an `insurer'.
Abbott is not "engaged in the business of making contracts of insurance" merely because it provides, through a trust, a long-term disability plan for its employees. Abbott does not offer the program primarily for profit, nor is the coverage of its own employees the result of advertisement or solicitation of insurance business from the general public or of holding itself out or doing business as a commercial insurer. See Metropolitan Police Retiring Assoc., Inc., 113 U.S.App.D.C. 168, 306 F.2d 775 (1962); Danna v. Comm'r of Ins., 228 So.2d 708 (La.App. 1st Cir. 1969); State ex rel Farmer v. Monsanto Co., 517 S.W.2d 129 (Mo.1974); Mutual Life Ins. Co. of N. Y. v. N. Y. State Tax Comm., 32 N.Y.2d 348, 345 N.Y.S.2d 475, 298 N.E.2d 632 (1973). Accordingly, Abbott is not an "insurer" subject to the Insurance Code; therefore, La. R.S. 22:657 A is not applicable to Abbott. The courts below correctly denied penalties and attorney fees in the instant case.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
DIXON, J., concurs in part, but dissents from the holding that the defendant was not an insurer.
DENNIS, J., dissents from the holding regarding the definition of an "insurer".
NOTES
[1] Calculating benefits for two months at $510.00, seven months at $243.90, three months at $225.20 and eight months at $214.60, judgment was rendered in favor of plaintiff and against defendant in the full sum of $5,119.70, plus legal interest from date of judicial demand until paid and all costs, including the expert witness fees which were fixed in the judgment.
[2] 352 So.2d 332 (La.App. 4th Cir. 1977).
[3] 354 So.2d 205 (La. 1978).