412 So.2d 701 (1982)
William J. NELSON, Plaintiff-Appellant,
v.
CONTINENTAL CASUALTY COMPANY d/b/a CNA Insurance and the State of Louisiana Employees Uniform Group Insurance Program, Defendants-Appellants.
No. 14803.
Court of Appeal of Louisiana, Second Circuit.
March 2, 1982.
Writ Denied April 21, 1982.
Jack D. Barnett, Shreveport, for plaintiff-appellant.
William J. Guste, Jr., Atty. Gen. by Tommy D. Teague, Baton Rouge, for defendants-appellants.
Before HALL, JASPER E. JONES and NORRIS, JJ.
HALL, Judge.
The State of Louisiana appeals from a judgment awarding plaintiff penalties of $12,108.80 and attorney fees of $2,500 under LSA-R.S. 22:657 for defendant's arbitrary failure to pay health and accident benefits under the State Employees Uniform Group Benefits Program within 30 days after proof of loss was filed. The state's assignments of error specify that the trial court erred in (1) holding that Act 240 of 1979, which amended LSA-R.S. 22:657 to make the penalty and attorney fees provisions of the statute applicable to the State of Louisiana, was interpretive legislation and, therefore, should be given retroactive effect so as to be applicable to plaintiff's claim which was filed and paid prior to the effective date of the amendment; (2) finding that the action of the state in delaying payment for approximately 90 days after proof of loss was filed was arbitrary and capricious; and (3) awarding an excessive amount of attorney fees.
The plaintiff also appeals contending that: (1) the trial court erred in failing to also render judgment against Continental Casualty Company, the administrator of the state program; and (2) the award of attorney fees should be increased for the services rendered on appeal.
For the reasons expressed in this opinion we reverse the judgment of the district *702 court and render judgment rejecting plaintiff's demands for penalties and attorney fees.
Facts
Plaintiff, employed as an investigator for the Alcoholic Beverage Control Commission of the State of Louisiana, suffered a heart attack while working on September 19, 1978. He was hospitalized until October 16, 1978 during which time he underwent a bypass operation and incurred hospital, surgical, and medical expenses totaling $15,028.10.
At the time the expenses were incurred plaintiff was covered under the State of Louisiana Employees Uniform Group Benefits Program, a self-funded program by which the state provides health and accident medical benefits for its employees. Continental Casualty Company (CNA), a commercial insurance company, was employed by the state as the claim administrator of the program. Plaintiff's initial claim was filed with the state on October 23, 1978. The form describes the nature of the sickness or injury as "heart attackfollowed by surgery". The question "Did injury occur in the course of any employment?" is answered "yes". The question "Have you or do you intend to file this claim under workman's compensation?" is answered "no". The state paid several claims submitted by plaintiff.
Sometime in November it was recognized in the claims office that plaintiff might have a workman's compensation claim. The state group medical benefits plan excludes claims covered in whole or part by workman's compensation insurance. In early December plaintiff was advised by the claim administrator that his plan did not cover medical expense for injuries arising in the course of his employment which is covered in part or in full by the worker's compensation carrier and plaintiff was advised to contact his personnel office for instructions on filing for worker's compensation benefits.
A file was forwarded to the adjusters for the state's worker's compensation insurer. The adjusters conducted an investigation, including an interview with the plaintiff. Based on their investigation, including statements by the physicians who treated plaintiff contained in the claim forms previously submitted which stated that plaintiff's illness was not connected with his employment, the adjusters denied plaintiff's worker's compensation claim on January 11, 1979. The claims administrator of the group medical program was notified of this action and on February 6, 1979, paid all pending claims totaling $12,108.80. Plaintiff filed suit on February 8, 1979, alleging that benefits were unpaid and seeking benefits, penalties, and attorney fees from the state and Continental Casualty Company. The case was ultimately tried in November 1980 and judgment was rendered in June 1981.
Applicability of LSA-R.S. 22:657
After all of the operative facts giving rise to this litigation had occurred and while this suit was pending, LSA-R.S. 22:657 was amended by Act 240 of 1979, effective September 7, 1979, to make the provisions of the statute applicable to the state health and accident benefit program by the addition of Subsection C which reads as follows:
"Any person, partnership, corporation or other organization, or the State of Louisiana which provides or contracts to provide health and accident benefit coverage as a self-insurer for his or its employees, stockholders or any other persons, shall be subject to the provisions of this Section, including the provisions relating to penalties and attorney fees, without regard to whether the person or organization is a commercial insurer provided, however, this Section shall not apply to collectively bargained union welfare plans other than health and accident plans."
Prior to the amendment and at the time plaintiff's claims were filed and paid, the statute, which is a part of the Insurance Code, provided in pertinent part:
"A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than 30 *703 days from the date upon which written notice and proof of loss ... are furnished to the insurer .... Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court...." (emphasis supplied)
The definitions section of the Insurance Code, LSA-R.S. 22:5, contains the following applicable provisions:
(1) "`Insurance' is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies. It shall include any trust, plan or agreement, popularly known as employee benefit trusts, not specifically exempted from state regulation under Public Law 93-406, except collectively bargained union welfare plans, single employer plans or plans of the state or political subdivisions. ..." (emphasis supplied); and
(2) "`Insurer' includes every person engaged in the business of making contracts of insurance, other than fraternal benefits societies. A reciprocal, an inter-insurance exchange or a Lloyds organization is an `insurer.' Any person who provides an employee benefit trust as specified in R.S. 22:5(1) is an insurer."
It is clear that prior to the 1979 amendment the penalty and attorney fees provisions of LSA-R.S. 22:657 were applicable to insurers and insurance contracts and were not applicable to the state and its self-funded state medical benefit program for employees. Plans of the state or political subdivisions were specifically excluded from the definition of insurance contracts by LSA-R.S. 22:5(1) and by reference the state was excluded from the definition of insurer by LSA-R.S. 22:5(2).
Since LSA-R.S. 22:657 was not applicable to the state medical benefit program at the time plaintiff's claims were filed and paid, there was no requirement that the state pay claims within 30 days after filing of proof of loss nor was there any statutory penalty for failing to do so.
In Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978) the court found that the defendant, who provided benefits for its employees under a long-term disability plan which was administered through a trust for its employees, was not an insurer subject to the Insurance Code and that, therefore, LSA-R.S. 22:657A was not applicable to it. The court noted that the employer was not engaged in the business of making contracts of insurance merely because it provided, through a trust, a long-term disability plan for its employees. Further, the employer did not offer the program primarily for profit nor was the coverage of its own employees the result of advertisement or solicitation of insurance business from the general public, or of holding itself out or doing business as a commercial insurer. The holding of the Killebrew case which involved a private employer would be equally applicable to the state as an employer providing a self-funded medical benefit program for its employees, even in the absence of the express exclusion of the state plan under LSA-R.S. 22:5(1) and (2).
It should be noted that the Killebrew case was decided prior to a 1978 amendment of LSA-R.S. 22:5(1) and (2) which added employee benefit trusts, with certain exceptions including plans of the state or political subdivisions, to the definition of insurance. It seems quite likely that the 1978 amendment to LSA-R.S. 22:5(1) and (2) and the 1979 amendment to LSA-R.S. 22:657 were prompted by the Killebrew decision and that the 1979 amendment to LSA-R.S. 22:657 was intended as a legislative overruling of the Killebrew case so as to make the penalty and attorney fees provisions of the statute specifically applicable to the self-insured programs offered by employers including the state. There is no basis, however, for applying the amendment retroactively so as to entitle the plaintiff in this case to penalties and attorney fees connected with claims that arose and were paid prior to the time the amendment became effective.
*704 The general principle of nonretroactivity of laws is expressed in LSA-C.C. Art. 8 which provides:
"A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts."
Likewise, LSA-R.S. 1:2 states that no statute is retroactive unless it is expressly so stated. There are, however, exceptions to the general rule of nonretroactivity. The court in Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331 (La.1978) stated:
"... According to civilian theory, however, the principle of non-retroactivity of existing legislation admits three exceptions: laws that suppress or lessen penalties, laws that are merely interpretive of existing legislation, and those that the legislature has expressly or impliedly declared to be retroactive. 1 M. Planiol, Civil Law Treatise, Nos. 249-252 (La.St. L.Inst.Transl.1959); A. Yiannopoulos, Civil Law System, 68 (1977)."
Additionally, many cases note that interpretive, remedial, curative, or procedural laws are generally accorded retroactive application. See e.g., Green v. Liberty Mutual Insurance Company, 352 So.2d 366 (La.App. 4th Cir. 1977), writ denied 354 So.2d 210 (La.1978); Morrison Food Service, Inc. v. Cohen, 376 So.2d 182 (La.App. 4th Cir. 1979). However, as the court noted in Lott v. Haley, 370 So.2d 521 (La.1979), procedural or remedial laws cannot consistently with state and federal constitutions apply retroactively to deprive a person of a preexisting right.
The trial court held that the 1979 amendment to LSA-R.S. 22:657 was an interpretive law and should be applied retroactively in this pending suit, relying on Dripps v. Dripps, 366 So.2d 544 (La.1978).
Interpretive laws do not establish new rules; they merely determine the meaning of existing laws and may, thus, be applied to facts occurring prior to their promulgation. In such a case it is not the interpretive law but the original law which applies; there is an apparent rather than a real retroactivity. Dripps v. Dripps, supra; Ardoin v. Hartford Accident and Indemnity Co., supra.
The 1979 amendment to LSA-R.S. 22:657 is not interpretive legislation. It changed the law as it existed prior to the amendment. Prior to the amendment the penalty statute applied only to insurers and to certain employee benefit trusts. Plans provided by the state were expressly excluded from the definition of insurance contracts and by reference the state was excluded from the definition of insurer. The 1979 amendment changed the law to make the provisions of the statute applicable to the state of Louisiana and other employers providing self-insured employee benefit plans. The amendment cannot be given retroactive effect as an interpretive statute because it changed existing law.
Dripps v. Dripps supra, relied on by the plaintiff and cited by the trial court, is readily distinguishable from the instant case. In Dripps, the plaintiff grandparents sought to have their rights of visitation with the children of their deceased son judicially determined. While the suit was pending, existing law was changed to provide for visitation rights for grandparents of adopted children. In holding that the amendment to the law was applicable in that case, the court did not hold that the amendment was an interpretive statute. The basis for the decision was that the change in the law should be applied to that case because the judgment fixing visitation rights was prospective in nature dealing with future rights of the parties and should be rendered in accordance with the law as it existed at the time the appellate court rendered its judgment. In the instant case we are dealing with rights of the parties that were fixed in accordance with the actions of the parties which took place prior to the time the law was changed and which were completed prior to the time suit was filed, not with prospective rights of the parties.
The plaintiff also relies on Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 (1952) and Davis v. United Fruit Company, 120 So.2d 273 (La.App.Orl.1960). In *705 Wright the Louisiana supreme court was confronted with the question of whether LSA-R.S. 22:658 providing for penalties for the failure to timely pay an insurance claim were applicable to a workman's compensation insurer who had issued its policy prior to the enactment of the statute. The court held that the statute was remedial in nature even though it imposed penalties and held it applicable in that case where payments were arbitrarily withheld for more than 60 days after enactment of the statute. In Davis, the court, relying heavily on Wright, noted that remedial statutes are to be accorded a liberal construction in favor of those entitled to their benefit. The court held that an amendment to the workman's compensation law imposing penalties and attorney fees upon an employer who unreasonably failed to timely pay an employee's claim had a remedial purpose and applied the amended statute to a pending suit where the employer was resisting payment of compensation benefits after enactment of the amendment. The instant case is quite different. Here, the defendant paid all benefits due before suit was filed and long before the amendment to the statute was adopted. There was no arbitrary delay in payment of benefits after the effective date of the amendment.
The issue of retroactivity of the 1979 act amending LSA-R.S. 22:657 was presented but not passed upon in Blewer v. Continental Assurance Company, 394 So.2d 842 (La. App. 3d Cir. 1981), writ denied 399 So.2d 602 (La.1981). In that case the state argued that since the plaintiff's claim arose on September 1, 1979, the date he was injured, to apply LSA-R.S. 22:657 as amended by Act 240, effective September 7, 1979, would be to give a retroactive effect to this substantive change in the law. The court disagreed, finding that plaintiff's cause of action for penalties and attorney fees did not arise until 30 days after he submitted his claim for medical expenses. The plaintiff in that case submitted his proof of loss on October 5, 1979 and, therefore, plaintiff's cause of action arose in November 1979 after the effective date of the amendment. The court in that case, therefore, was not presented with the retroactive application of the amended statute.
The act amending the penalty statute did not expressly state that it was to be retroactive. LSA-R.S. 1:2. To the contrary, the purpose of the amendment is to encourage prompt payment of claims by self-insured employers, including the state, who provide employees health and accident benefit programs. That purpose would not be served by applying the statute retroactively to claims which have already been paid.
Since LSA-R.S. 22:657 did not apply to the state and its medical benefits program at the time the operative facts giving rise to this litigation took place, and since the 1979 amendment to the statute cannot be applied retroactively, the judgment of the district court against the state awarding penalties and attorney fees must be reversed and plaintiff's demands for penalties and attorney fees must be rejected.
Plaintiff's contention on appeal that the trial court erred in denying its claim against Continental Casualty Company is without merit. Continental, although a commercial insurance company, was not an insurer in this instance. It had no contractual relationship with the plaintiff. Its position was strictly as an employed claims administrator for the state. LSA-R.S. 22:657 imposes penalties only on the insurer and, as amended, the employer providing a self-insured plan. The statute is not applicable to the employed claims administrator, Continental.
These determinations being dispositive of the case, it is unnecessary to consider the other issues raised by the assignments of error.
For the reasons assigned the judgment of the district court in favor of plaintiff against the state is reversed and the plaintiff's demands are rejected. The judgment rejecting plaintiff's demands against Continental Casualty Company is affirmed. The cost of appeal is assessed to the plaintiff.
Reversed in part and rendered; affirmed in part.