430 So.2d 1376 (1983)
STATE of Louisiana and the Military Department, State of Louisiana
v.
LACONCO, INC., et al.
No. 82 CA 0598.
Court of Appeal of Louisiana, First Circuit.
April 13, 1983.
*1377 Ann B. Steinhardt, New Orleans, for State of Louisiana, Military Dept., State of Louisiana plaintiff.
*1378 Horace B. Womack, Baker, for Laconco, Inc. defendant.
John A. Lieux, Gonzales, for Hilton J. Haydel, d/b/a Ascension Roofing & Sheet Metal Works & J.C. Sebastian Painting Contractor defendant.
Michael J. Matthews, Gonzales, for Economy Brick Sales, Inc. defendant.
Ralph Tureau, Gonzales, for M & B Heating & Air Conditioning and Picou Brothers Const. Co. defendant.
Peter W. Arbour, Baton Rouge, for Howard Olivier, d/b/a Howard Olivier Builder defendant.
E. Wade Shows, Baton Rouge, for Laconco, Inc., & Commercial Union Ins. Co., Horace B. Womack, David Womack defendant.
Ben F. Day, Baton Rouge, for Alan Kifer, d/b/a Southern Landscaping defendant.
Richard M. Mary, Baton Rouge, for the Vince Corp., & United States Fidelity & Guaranty Co. defendant.
Marshall J. Favret, New Orleans, for Metfab, Inc. defendant.
James H. Morgan, III, Baton Rouge, for Accardo Title Contractor, Inc. defendant.
Charles W. Nelson, Jr., New Orleans, for Architectural Hardware, Inc. defendant.
David S. Bell, Baton Rouge, for Commercial Union Ins. Co. defendant.
Daniel J. Dziuba, Baton Rouge, for Southern Specialties defendant.
Charles F. Seemann, Jr., Deutch, Kerrigan & Stiles, New Orleans, for Maryland Cas. Co. defendant.
Jay H. Kern, New Orleans, for State of Louisiana plaintiff.
H. Michael Aaron, Baton Rouge, for Howard Olivier, d/b/a Howard Olivier Builder, Bucklew's Food Serving Equipment, Inc. & Dependable Glass Works, Inc. defendant.
Warren L. Mengis, Baton Rouge, for Dub Johnson Paving Contractor, Inc., & N.E.W. Elec. Co. defendant.
Gordon R. Crawford, Gonzales, for Buckles Sheet & Metal and J.C. Sebastine, Sebastine Painting Contractor defendant.
Before COVINGTON, LANIER and ALFORD, JJ.
ALFORD, Judge.
This matter originated as a concursus proceeding instituted by the Military Department of the State of Louisiana and the State of Louisiana (hereinafter referred to as State). Suit was filed on February 21, 1978. Cited to appear and assert their respective claims were the following: Laconco, Inc. (the general contractor), Commercial Union Insurance Co. (the general contractor's surety), and the subcontractorsMetfab, Inc.; Accardo Tile Contractors, Inc.; Buckelew's Food Serving Equipment Company, Inc.; Glass House and Supplies, Inc.; Hilton Haydel d/b/a Ascension Roofing and Sheet Metal Works; Dub Johnson Paving Contractors, Inc.; MB Heating and Air Conditioning, Inc.; Architectural Hardware, Inc.; Economy Brick Sales, Inc.; Howard Olivier d/b/a Howard Olivier Builder; Pecou Brothers Construction Company, Inc.; J.C. Sebastian d/b/a J.C. Sebastian Painting Contractor; Alan W. Kifer d/b/a Southern Landscaping; Vince Corporation; N.E.W. Electric Company, Inc.; and Dependable Glass Works, Inc., (hereinafter, unless referred to in particular, collectively referred to as subcontractors).[1] Laconco, Inc. answered and asserted claims against the State and the subcontractors. The subcontractors answered and asserted claims against the State and Laconco. (Of course with respect to third parties, Laconco and Commercial Union are considered one and the same.)
Following a trial on the merits on September 16, 1980, the district court rendered *1379 judgment in favor of all subcontractors except Metfab, Inc., and Glass House and Supplies, Inc.[2] Included in the awards were the amount of the lien filed by each subcontractor, legal interest and 10% attorneys' fees pursuant to LSA R.S. 38:2246.[3] Judgment was rendered in favor of the subcontractors and against the State and Laconco (and Commercial Union), but the State's liability was limited to $63,598.21the amount it held in retainage. The State's claims against Laconco for liquidated damages, and against the subcontractors were dismissed. Laconco's claims against the State for damages and attorneys' fees were rejected. Additionally, all claims made by Laconco against the subcontractors were rejected. Finally, Commercial Union's claim against Laconco and its principals, Horace and David Womack, for indemnity was recognized, although no monetary figure was mentioned in the judgment. From this judgment (dated December 7, 1981), appeals were taken by the State and Laconco. Various subcontractors answered these appeals, seeking damages for frivolous appeal. Additionally, Dub Johnson Paving Contractors, Inc. and MB Heating and Air Conditioning, two of the three subcontractors eligible for the 10% attorney fees provision of LSA-R.S. 38:2246 who did not receive the 10%, appealed the denial.
The evidence discloses that the State entered into a general contract with Laconco whereby Laconco was to furnish all materials and perform all labor according to plans and specifications in the construction of a 60-man National Guard Armory. The contract price was approximately $511,000.00. The contract, signed September 17, 1975, was to have an estimated completion date of November 4, 1976. Laconco entered into numerous subcontracts for various portions of the work.
Construction proceeded according to plan. On November 2, 1976, Harry Baker Smith, the architect, wrote a letter to appropriate Guard personnel authorizing release of the final stage payment. Smith wrote,
"the remainder of the work is complete less minor details... We will release the last request for payment since sufficient funds will be left to cover completion."
On November 30, 1976, a certificate for payment representing completion of 97% of the work was submitted by the contractor. This certificate was approved by the architect on February 2, 1977. Nevertheless, the State ceased all payments to Laconco in February of 1977 (no exact date is given). There is some testimony and argument that the Guard commenced occupation in February also. Finally, the first liens on the project were filed February 23, 1977, by Dub Johnson Paving Contractors, Inc. and N.E.W. Electric Company, Inc.
A preliminary punch list was drafted on March 3, 1977. Final inspection was made on March 29, 1977; this resulted in the first complete punch list which the architect submitted to Laconco. Four "major" items were noted and other minor defects were cited. Smith advised the Guard to occupy the building on April 15, 1977. On April 27, 1977, Horace Womack, president of Laconco, wrote a letter to Smith in reply to the March 29, 1977, punch list. Womack noted that most of the items were completed or corrected. On the other items, work was in progress. The architect responded to this letter with a list of items either completed satisfactorily, or still in need of work.
Apparently negotiations broke down. During the spring and early summer of 1977, all remaining liens, except two, were filed. Laconco was put into default on June 22, 1977.
*1380 There was testimony from Major Croft of the Guard that the Guard formally occupied the building July 7, 1977. Significantly, there was also testimony from numerous parties that Laconco and the subcontractors continued work on the project in a vain attempt to satisfy the owner. In fact, Laconco was never ordered to cease work.
Before the concursus proceeding was filed, and in the hope of settlement, Commercial Union engaged the services of Raul Gonzales, a certified engineer with a specialty in construction. Gonzales inspected the site on January 11, 1978. At trial, after he was accepted as an expert, Gonzales testified the structure was between 99.5% and 99.9% complete on January 11, 1978. (In the meantime, the final lien was filed January 31, 1978). The concursus proceeding was filed on February 21, 1978. Nevertheless, Gonzales met with the Guard to discern the reason for the stalemate on acceptance of the building and payment of the retainage. Gonzales testified the Guard was uncooperative and would not aid him in his quest to ameliorate the remaining defects (if any).
Almost a year later, on February 21, 1979, another punch list was drafted. This resulted in complaints from the subcontractors alleging some items on this punch list had not appeared on any other list. Moreover, many subcontractors complained that some items on the February 21, 1979, punch list were maintenance items.
Over a year and a half later, trial on the merits was had on September 16, 1980. After conclusion of the testimony, the court issued excellent oral reasons for judgment which succinctly set forth his impression of the evidence:
The matter is before the Court following the remand from the First Circuit directing this Court to hear all of these claims in a concursus proceeding. Involved are various claims arising out of the construction of the National Guard Armory Unit in Gonzales. The general contractor, Laconco, and various subcontractors have all filed various claims... It appears from the field report of the architect Mr. Harry Baker Smith, dated November 3, 1976 that this project was substantially complete. However, by letter dated March 31, 1977, addressed to Laconco, Inc., Mr. Smith stated as follows, "Our inspection of the referenced job on March 29, 1977 finds this project not ready for acceptance. We see four major problems. One, the site grading and asphalt paving does not meet the requirements of the contract. Two, the three exhaust fans require work on the sheet metal housing. Three, the type "A" windows must be plumbed. Four, the condition of the roofing and flashing at the high bay connection. The items are too major to allow an acceptance until corrected. We have advised the Guard to occupy this building on approximately April 15, 1977." With all due respect to Mr. Harry Baker Smith, this letter is in error. All of the evidence before this Court indicates substantially that this project was 99.5% to 99.9%, as Mr. Gonzales states, completed. Major Croft [of the Guard] testified as of today, that Item Two, the three exhaust fans and also Item Four, the condition of the roofing and flashing have been taken care of. He was unable to state whether or not these items were corrected before or after the notice of default was issued. There is no proof in the record that these items were not performed prior to the time of the notice of default was issued. With regard to Item One, the site grading, he admitted had been taken care of. The only two major items, which he testified to today, were that the asphault paving does not meet the requirements of the contract. And that the type "A" windows are not satisfactory. All of the evidence in the record, again, is to the effect that the asphalt paving does meet the requirements of the contract. The only problem that the Court sees is with the type "A" windows. It is apparent from the testimony of Mr. Gonzales that they are not aeshetically pleasing, although they are otherwise functional and *1381 satisfactory. On a contract in excess of half a million dollars, these minor items certainly deserve the description accorded to them by Mr. Crawford, de minimis non curat lex. The law takes no account of trifles. The Military Department for some reason for which this Court cannot fathom has continuously refused to present the final punch list. This Court ordered it, that Judgment was affirmed on appeal. And despite the elapse of a couple of years and many, many pages of argument, testimony, and everything else, there has never been in any occasion any consistent coherent common sense presentation to this Court by the Military Department as to what is wrong with this building. The Military Department in refusing to pay the balance due on this contract has been guilty of a grave imposition upon this contractor and the subcontractors. It is unconscionable. And I find no justification for it whatsoever.
As previously noted, the trial court found in favor of the subcontractors and against the State, Laconco and Commercial Union. The judgment was cast against the State, Laconco and Commercial Union "in solido". However, when one reads the transcript of the court's oral reasons for judgment in conjunction with the formal signed judgment, one can see that the court recognized Laconco's claim against the State for the retainage. Additionally, in the same paragraph wherein the court awarded judgment in favor of the subcontractors against the State, Laconco and Commercial Union, the trial judge also inserted the words "with legal interest" at the end of the paragraph immediately before he recites the awards in favor of specific subcontractors. Yet in the awards to the individual subcontractors, the trial judge also includes a provision for legal interest. Clearly, the subcontractors are not entitled to two awards of legal interest. Accordingly, we feel that the words "with legal interest" in the first paragraph noted above signifies that the trial judge meant to add legal interest to the judgment in favor of Laconco and against the State.
Of course, the trial judge properly limited the awards against the State to the retained portion of the contract price. In effect, the judge held in favor of Laconco against the State on their contract, and in favor of the subcontractors and against Laconco and Commercial Union on their subcontracts. Since there was never any allegation of defectiveness in the contractors bond, then under the Public Works Act (LSA-R.S. 38:2181, et seq.), the State's only liability is to pay the contract price to Laconco, LSA-R.S. 38:2244; Napko Corporation v. Marshall-Koehl, Inc., 329 So.2d 472 (La.App. 4th Cir.1976), writ refused, 332 So.2d 866 (La.1976), hence the valid limitation on the State's exposure.
The State has appealed the decision of the trial court, citing as its only specification of error the assertion that the trial court ignored the contract between the State and Laconco, and the applicability of LSA-R.S. 38:2242.[4] Indeed most of the State's brief consists of a verbatim transcription of a few provisions of the general contract. In sum, the State argues that under the terms of the contract, it has been justified in withholding the retainage for over six years. We disagree.
The contract entered into between the State and Laconco was not atypical of the normal construction contract. As work is completed on various stages of the project, the architect approves progress payments to the general contractor. Eventually, payments total 90% of the contract price. At *1382 this point, the project is, for all intents and purposes, complete, less minor corrective work. When the contractor certifies that all liens (if any) recorded against the project have been released, the project is accepted and the remaining 10% (the retainage) is paid to the contractor. In the typical contract, as in this case, if the architect or owner deems it expedient to make corrections, they may deduct these from the contract price.
The contract in this case permitted the owner to withhold the entire retainage until the architect determined "all work" had been completed. This is the standard practice in the construction industry. On every construction project, especially one as large as this, even after all of the construction is finished, there will remain minor corrective tasks which must be accomplished prior to the final completion of the work. Light bulbs may not be functioning; screws may be missing; windows may need cleaning, etc. However, if the architect has inspected the job properly throughout the process of construction, only minor details should remain unattended when the final stage payment is made.
The courts have been called upon to interpret this particular class of contracts in the past. The law in Louisiana is that once the project is substantially complete, then the contractor is entitled to the contract price. If corrective work is required, the owner is entitled to deduct the cost of this work from the retainage and withhold it until the work is satisfactory. However, the owner is not entitled to withhold the entire retainage (in this case over 10% of the contract price) until every minor deficiency is taken care of. He can retain only as much as reflects the cost of uncompleted work. Boydstun v. Johnson, 401 So.2d 629 (La.App. 3rd Cir.1981), writ denied 404 So.2d 1262 (La.1981). Logically, the function of the punch list is to apprise the contractor of work in need of correction. As such, it should be forthcoming at or near the time of substantial completion in order that the project may be closed out as soon as possible.
The testimony in this case is overwhelming that the armory was substantially complete on time in November of 1976. The letter or "field report" of the architect quoted earlier verifies such. Smith, the architect, wrote that beside some remaining brick work, everything else was complete, less minor details. The unrefuted testimony of Horace Womack, president of Laconco, confirms the architect's report. Additionally, there was testimony from many of the subcontractors that their portion of the work was completed on time. The State failed to present any evidence in opposition to these assertions. Thus, our perusal of the record convinces us that the project was substantially complete, and fit for the use it was intended in November of 1976. A preliminary inspection resulting in a punch list of the minor deficiencies should have been forthcoming at this time.
On November 30, 1976, Laconco submitted a certificate for payment representing 97% of the contract price. This certificate was approved by the architect on February 2, 1977 (prior to the filing of the first lien). Thus, the architect was following correct procedure in authorizing release of an additional 7% of the contract price from the 10% retainage the State still had. Yet, curiously this payment was never made as the State remains in possession of an amount exceeding 10% of the original contract price. We think the evidence is uncontroverted that between November 3, 1976, and February 2, 1977, under any common sense definition of the term "all work", and that definition as construed by the jurisprudence (Boydstun), and perceived in the construction industry, this project was completed. What remained undone was simply minor corrective tasks for items previously complete on February 2, 1977. There was simply no excuse for withholding anything but a minor percentage of the retainage at this point, and the architect's approval of release of additional funds on February 2, 1977, verifies such. Withholding the entire retainage past this point was, as the trial judge stated, unconscionable. We completely agree with the trial court's *1383 conclusion that the State has simply failed to prove the existence of anything but minor deficiencies, and was not reasonable in withholding the entire retainage.
In the same specification of error, the State implies that R.S. 38:2242 prevented the release of the retainage. Of course, the specification begs the question given the fact that all but a possible 3% of the retainage should have been released on February 2, 1977. This would have been prior to the filing of the first lien. In any case, R.S. 38:2242 only provides for the filing of a lien "after the recordation of acceptance of the work ... or of notice of default of the contractor." The testimony of the architect demonstrates that this project has never been accepted, and the notice of default did not come until June 22, 1977, long after the State had any excuse for withholding the entire retainage. Thus, the two factors which would operate to enlarge the State's responsibility did not occur until after the retainage should have been released.
In summary, the State has failed to show any reason whatsoever why they are still holding the entire retainage. Under the terms of the general contract, the practices in the industry, the statutory law, and the jurisprudence, the retainage should have been released long ago. We reject the State's specification of error and affirm the trial court's decision recognizing Laconco's right to the retainage.
Laconco has appealed the decision of the trial court alleging several specifications of error. One specification is addressed to the subcontractors and two relate to the State. With respect to the subcontractors, Laconco asserts the trial court erred in not enforcing the terms of paragraph 21 of the subcontracts. Paragraph 21 provides:
"Should contractor employ an attorney to enforce any of the provisions thereof, or to protect its interest in any matter arising under this contract, or to collect damages for the breach of this contract, or to prosecute or defend any suit resulting from this contract, or to recover on the surety bond given by subcontractor under this contract, subcontractor and his surety, jointly and severally, agree to pay contractor all reasonable costs, charges, expenses and attorney's fees expended or incurred therein."
Using this provision, Laconco is seeking to recover attorneys' fees and costs from its subcontractors. In accordance with our decision in McGowan-Rigsby Supply, Inc. v. Charles Carter & Company, Inc., 268 So.2d 716 (La.App. 1st Cir.1972), (see also Charles Carter and Company, Inc. v. Charles W. Hogg Company, Inc., 355 So.2d 16 (La.App. 1st Cir.1977)), we reject this specification of error. In McGowan-Rigsby we held:
"We do not interpret paragraph 21 ... as indicative of Big River's [the subcontractor] agreement to be responsible for the contractor's attorney's fees in an action which Big River successfully prosecutes to obtain full payment for work performed pursuant to the contract in accordance with the contract terms and specifications. An agreement of such nature will not be presumed because of the obvious unconscionable advantage resulting to the contractor therefrom." 268 So.2d 716 at 722.
The trial judge determined that the subcontractors performed their jobs in good faith and in a workmanlike manner. We agree with this decision. The lower court did not find any defective performances on the part of the subcontractors and awarded judgment in their favor. In McGowan-Rigsby, this court has clearly ruled that a subcontractor need not indemnify the general contractor under a paragraph 21 type provision where, as here, the subcontractors successfully prosecute to obtain full payment for work performed pursuant to the contract terms and specifications. The trial court did not find any breach on the part of the subcontractors and we agree with this decision. Accordingly, Laconco is not entitled to indemnity from the subcontractors and as such we reject this specification of error.
Laconco's other specifications of error relate to claims made against the State. Although one specification is numbered as a subsection of the above discussed specification *1384 with respect to the subcontractors, nevertheless, we think Laconco intended this to be a separate specification, and we will treat it as such. The specification provides:
"The trial court failed to require the State to pay appellant's attorney's fees and costs for indemnification demanded by appellant's surety both of which amounted to $33,710.87 and due to the State's unjustified refusal to accept the armory as completed." (emphasis supplied)
Unfortunately, the contractor does not explain this specification, nor does he cite the court to any cases relevant to this issue. Additionally, Laconco does not say in its brief where the $33,710.87 figure is derived from.
It is our view that this assignment has two parts: 1) Laconco wants the State to pay Laconco's own attorney's fees incurred during the litigation; and 2) Laconco also wants the State to pay the costs Commercial Union has incurred throughout this litigation. With respect to the first part, Laconco does not indicate where in the record the necessary documents proving this claim are located. Moreover, our perusal of the record fails to locate the supporting proof. Apparently, the only proof is the assertion made by Laconco's counsel in a colloquy with the judge at the end of the trial that Laconco (and the Womacks) had expended over $20,000.00 in attorney's fees throughout this litigation. Of course, the closing arguments of counsel are not evidence.
In any case, the law in Louisiana is well-settled that attorney's fees are not recoverable unless specifically provided for by contract or by law. Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978). Neither basis for recovery is shown to exist by Laconco and we therefore reject this specification.
The second part of the specification seeks reimbursement for the money Laconco and the Womacks may owe Commercial Union. The evidence indicates that Commercial Union was the surety for Laconco on the armory project, and that pursuant to this obligation, Commercial Union has incurred various costs and expenses. Although no specific monetary award was mentioned, the trial court reserved to Commercial Union all rights it may have had against Laconco and Horace and David Womack for the costs and expenses it may have incurred in this litigation. On appeal, Commercial Union seeks three objects: 1) to be reimbursed for the actual costs and expenses it may have incurred up to now; 2) judgment in its favor and against Laconco, Horace Womack and David Womack, in solido, in any sum in which the surety may be cast in judgment in favor of anyone else in the concursus proceeding; and 3) priority to any money paid Laconco pursuant to an assignment of rights to contracts and contract balances Laconco entered into with Commercial Union.
The evidence indicates that Laconco and the Womacks entered into an indemnity agreement with Commercial Union wherein they agreed to indemnify the latter for any sum in which Commercial Union may be cast in judgment in favor of any party, and for "any and all liability, loss, costs, damages, fees of attorneys" and other expenses which Commercial Union may sustain or incur in consequence of the execution of the performance and payment bonds. Filed into evidence at trial was a joint stipulation between Commercial Union and the indemnitors. All parties agreed that as of September 11, 1980, Commercial Union had expended $13,710.87 pursuant to its obligations on the bonds. Additionally, a like stipulation was entered into evidence reflecting costs Commercial Union had incurred between September 11, 1980, and September 24, 1981. This stipulation indicated costs had increased $2,003.85. Finally, since this latter date, Commercial Union has expended an additional $1,895.38 as shown by an invoice presented to this court by written motion in reliance upon Al Smith's Plumbing & Heating Service, Inc. v. River Crest, Inc., 365 So.2d 1122 (La.App. 4th Cir.1978). Consequently, through the date of oral argument in this case (February 10, 1983), Commercial Union has expended *1385 $17,610.10 in attorney's fees and costs for which it claims indemnity from Laconco and the Womacks.
The indemnitors resist Commercial Union's claim on two grounds: 1) they argue the indemnity agreement contains a potestative condition and is therefore null; 2) in the alternative, they assert that Commercial Union's claim is for costs incurred in establishing the right to indemnification and pursuant to Williams v. California Company, 289 F.Supp. 376 (E.D.La.1968), such costs are unrecoverable. Laconco and its officers argue that paragraph six of the agreement is potestative:
"We [Laconco and the Womacks] hereby authorize the company in its sole discretion to do the following: (a) from time to time to make or consent to any change in, or issue any substitute for or renewal of such bond, and the instrument shall apply to such substituted or changed bond or renewal; (b) to have free access to our books, records, and accounts, and to cause an examination thereof to be made by public accountants at our cost and expense; (c) to take such steps as the Company may deem necessary or proper to obtain release from liability under such bond; (d) to fill up any blanks left herein and any such insertions, when so made, shall be prima facie correct."
A potestative condition is a condition which makes the execution of the agreement depend on an event which is in the power of one or the other contracting parties to bring about or hinder. LSA-C.C. art. 2024. If an agreement containing a potestative condition depending solely on the will of the obligor is contracted, it is null. LSA-C.C. art. 2034. In other words, if in an agreement a party binds himself, but his obligation depends solely on a potestative condition which is in the will of the obligor to bring about or hinder, then there is really no obligation and the agreement is null and void. LSA-C.C. 2035. However, only those potestative conditions which are dependent solely upon the will, whim, or caprice of the obligor invalidate contracts. Franks v. Louisiana Health Services & Indemnity Company, 382 So.2d 1064 (La.App. 2nd Cir. 1980).
At the outset, it can immediately be seen that paragraph six quoted above does not in any way effect the "execution of the agreement"; its complete omission would not alter the indemnity arrangement in any respect. Additionally, in order for a condition to be potestative, it's execution must depend upon the will of the obligor to bring about or hinder. The obligors in the indemnity agreement are Laconco and the Womacks; Commercial Union is the obligee. Thus, even if paragraph six effected the execution of the agreement (which it does not), its implementation depends upon the discretion of the obligee. Consequently, paragraph six simply does not meet the definition of a potestative condition. We hold that the indemnity agreement does not contain a potestative condition and we reject this argument by the indemnitors.
The indemnitors next argument in opposition to Commercial Union's demand for reimbursement is that the $17,610.10 figure represents costs incurred in establishing the right to indemnity and are thus not recoverable. It is the general law of indemnity that although an indemnitee may recover from its indemnitors costs and expenses incurred in the defense of a claim against the principal, nevertheless, the indemnitee may not recover those costs and expenses incurred simply establishing the indemnitees right to indemnification from the indemnitors. Signal Oil & Gas Company v. Barge W-701, 654 F.2d 1164 (5th Cir.1981), cert. denied, 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982); Williams.
Because there was no discussion of this issue at trial, the court must decide from the exhibits what portion of the $17,610.10 figure was expended for defense of Laconco pursuant to the bond, as opposed to that portion expended by Commercial Union simply to establish the right to indemnification. The court's task is made easier by the fact that the claims for $13,710.87 and $2,003.85 were stipulated by Commercial Union and the indemnitees to have been funds expended in defense of Laconco *1386 against claims arising out of the payment and performance bond provided by Commercial Union. The third claim for $1,895.38 allegedly represents funds Commercial Union has expended since the trial of this case. We perused the invoice submitted by the attorneys for Commercial Union in order to distinguish between funds expended for defense of Laconco as opposed to those funds expended merely to establish the right of indemnification. Our conclusion is that of the $1,895.38 total figure, $232.87 of it was expended merely to establish the right of indemnification. The remainder, $1662.51, was expended in defense of Laconco and is properly chargeable to the indemnitors. Thus, a total of $17,377.23 was expended in defense of Laconco as opposed to simply establishing Commercial Union's right to indemnity, and we reject the indemnitors contention that this money is not due Commercial Union.
Having rejected the only two arguments posited against the enforcement of the indemnity agreement, and in accordance with the district court's judgment reserving all rights Commercial Union may have pursuant to the agreement, we hereby award judgment in favor of Commercial Union and against Laconco, Inc., Horace B. Womack and David Womack, in the amount of $17,377.23 with legal interest, plus any sum in which Commercial Union may be cast in judgment in favor of the subcontractors. Furthermore, as per the indemnity agreement, Commercial Union is entitled to judgment in its favor and against Laconco, recognizing Commercial Union's assignment of Laconco's rights to the armory construction contract balance, in preference and priority to Laconco in the amount of Laconco's judgment against the State to the extent of any amount that Commercial Union is entitled to recover from Laconco.
Laconco next asserts that the State should be required to indemnify Laconco and the Womacks for the money the indemnitors are cast in judgment in favor of Commercial Union Insurance Company. No express indemnity agreement in the contract between the State and Laconco is cited. Additionally, the brief submitted on behalf of Laconco does not contain any case or statutory authority supporting an indemnity arrangement similar to that which the indemnitors posit in this case. Moreover, the indemnitors do not advance any argument in their brief supporting their assertion. Furthermore, the indemnitors have not directed the court to any exegetical authority which supports the proposition that implied indemnity may be permissible, particularly where the indemnification appears to be mainly for attorneys' fees. Killebrew, 359 So.2d at 1278. Absent any showing in the record or in Laconco's brief of the existence of an indemnitor-indemnitee relationship between Laconco and the Womacks on one hand and the State on the other, the court must reject this specification of error.
Finally, Laconco specifies as error the trial court's refusal to grant legal interest to Laconco on its judgment for the retainage. As we stated earlier, a reading of the formal judgment will indicate that the trial judge intended the award of $63,598.21 to Laconco to include legal interest. Thus, Laconco's specification is moot.
Several of the subcontractors answered the appeals taken by the State and by Laconco seeking damages for frivolous appeal. Additionally, Dub Johnson Paving Contractors, Inc. and MB Heating and Air Conditioning, Inc. answered the appeals seeking the 10% allowance for attorneys' fees provided in LSA-R.S. 38:2246.[5]
As we clearly stated in Jackson v. East Baton Rouge Parish School Board, 348 So.2d 739 (La.App. 1st Cir.1977):
"Article 2164 of the Code of Civil Procedure authorizes a claim for damages for *1387 frivolous appeal, but its provisions are penal in nature and must be strictly construed. Appeals are favored, and the imposition of penalties for a frivolous appeal will not be granted unless they are clearly due. Damages for frivolous appeal will not lie unless it manifestly appears that the appeal was taken solely for delay or that appealing counsel does not seriously believe in the position he advocates, even though the appeal lacks serious merit." 348 So.2d 739 at 741.
In short, though an appeal may seem untenable, it is not frivolous if taken with sincerity and not for the purposes of delay. Brasseaux v. Reaux, 394 So.2d 688 (La.App. 3rd Cir.1981). We think the State was earnest in believing that the job was not complete to the point that the retainage could be released. Although the State may have misinterpreted the contract between it and Laconco and the law applicable thereto, this is not tantamount to saying that the State's attorneys did not believe in the cause they espoused, or that they perfected the appeal simply to delay a final judgment. By the same token, Laconco was certainly reasonable in assuming that if there were defects with work done on the project, such that the State felt it could sincerely appeal the trial court's decision, then under the terms of the subcontracts, Laconco could look to the subcontractors to indemnify Laconco for the damage it might suffer. Thus, we do not feel that the appeals taken by either the State or Laconco were merely for the purposes of delay, nor do we feel counsel for either appellant did not seriously believe in the position he advocated. As such, the claims of the subcontractors for frivolous appeal are rejected.
Subcontractors Dub Johnson Paving Contractor, Inc. and MB Heating and Air Conditioning, Inc. appealed from that part of the judgment disallowing them 10% attorneys' fees as per LSA-R.S. 38:2246. This statute specifically provides that after amicable demand for payment has been made on the principal and surety and 30 days have elapsed without payment being made, any claimant recovering the full amount of his recorded or sworn claim, whether by concursus proceeding or by separate suit, shall be allowed 10% attorneys' fees which shall be taxed in the judgment on the amount recovered. The trial court denied attorneys' fees to Dub Johnson Paving Contractor, Inc. and MB Heating and Air Conditioning, Inc. because their sworn and recorded claims included various change order amounts. Apparently, these change orders were not in writing as required by the subcontract entered into by the claimants. Thus, the trial judge held that the change order amounts were not recoverable and, therefore, Dub Johnson and MB Heating could not recover the full amount of its recorded claim. The jurisprudence is clear that LSA-R.S. 38:2246 is penal in nature and its provisions must be strictly construed. Louisiana School Supply Co. v. Abraham, 209 So.2d 347 (La.App. 4th Cir.1968), writ refused, 252 La. 462, 211 So.2d 329 (1968). The full amount of the recorded claim must be recovered as a condition precedent to the award of the 10% attorneys' fees. Such was not the case with respect to the judgments in favor of Dub Johnson Paving Contractor, Inc., and MB Heating and Air Conditioning, Inc. Consequently, we feel the trial judge was correct in denying these claims and we affirm his decision.
For the reasons assigned, the judgment of the trial court is amended and affirmed and as amended recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Laconco, Inc. against the State of Louisiana and the Military Department, State of Louisiana in the sum of $63,598.21 plus legal interest to run from the date of the filing of the concursus proceeding;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the following subcontractors, suppliers and materialmen and against Laconco, Inc. and Commercial Union Insurance Company, in solido:
A) Hilton Haydel, d/b/a Ascension Roofing and Sheet Metal Works, in the full sum of $10,395.88, together with legal interest *1388 from date of his demand until paid, and an additional ten (10%) percent attorney fees on the principal amount;
B) J.C. Sebastian, d/b/a J.C. Sebastian Painting Contractor in the full sum of $2,468.30, together with legal interest from the date of judicial demand until paid, and an additional ten (10%) percent of the principal as attorney's fees;
C) Accardo Tile Contractors, Inc. in the full sum of $2,367.80 together with legal interest from date of its demand until paid, together with ten (10%) percent additional as attorney fees on the principal;
D) Economy Brick Sales, Inc. in the full amount of $1,683.16, together with legal interest from date of its demand, until paid, and an additional ten (10%) percent of the principal demand as attorney fees;
E) Alan W. Kifer, d/b/a Southern Landscaping, in the full sum of $4,233.93, together with legal interest from date of his demand until paid, together with an additional ten (10%) percent of the principal claim as attorney fees;
F) Architectural Hardware, Inc. in the full sum of $484.82, together with legal interest from date of judicial demand until paid, and an additional ten (10%) percent of the principal demand as attorney fees;
G) Buckelew's Food Serving Equipment Company, Inc. in the full sum of $4,408.75, together with legal interest from date of judicial demand until paid, and an additional ten (10%) percent of the principal claims as attorney fees;
H) Dependable Glass Works, Inc. in the full sum of $827.45, together with legal interest from date of its judicial demand until paid, together with an additional ten (10%) percent of the principal demand as attorney fees;
I) Vince Corporation in the full sum of $5,676.20, together with legal interest from date of judicial demand;
J) Dub Johnson Paving Contractor, Inc. in the full sum of $24,765.55, together with legal interest from date of judicial demand, until paid;
K) N.E.W. Electric Company, Inc. in the full sum of $9,328.00, together with legal interest from date of its judicial demand, until paid, and an additional ten (10%) percent as attorney fees on the principal claim;
L) Southern Specialities, Inc. in the full amount of $1,542.60, together with legal interest from date of its judicial demand until paid;
M) Howard Olivier, d/b/a Howard Olivier Builder, in the full sum of $2,080.39, together with legal interest from date of judicial demand, until paid, and an additional ten (10%) percent of the principal claim as attorney fees;
N) Picou Brothers Construction Company, Inc. in the full sum of $1,156.10, together with legal interest from date of judicial demand until paid and an additional ten (10%) percent of the principal claim as attorney fees;
O) M.B. Heating and Air Conditioning, Inc. in the full sum of $4,916.50, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claim of Metfab, Inc. be and the same is hereby denied.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claims of Laconco, Inc. against the above enumerated claimant subcontractors, materialmen and suppliers or their sureties are hereby denied and the said claims are dismissed;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Commercial Union Insurance Company and against Laconco, Inc., Horace B. Womack, and David Womack, in solido, in the sum of $17,377.23, plus legal interest to run from the date of the filing of the concursus proceeding; and for judgment in favor of Commercial Union Insurance Company and against Laconco, Inc., Horace B. Womack and David Womack, in solido, for the reimbursement of any *1389 sums paid pursuant to the above award to the subcontractors, suppliers, and materialmen for which Commercial Union Insurance Company is liable and has been cast; and for judgment in favor of Commercial Union Insurance Company and against Laconco, Inc. recognizing Commercial Union Insurance Company's priority to any money paid Laconco, Inc. pursuant to the assignment of rights to contracts and contract balances entered into between Commercial Union Insurance Company and Laconco, Inc;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claim of the State of Louisiana and the Military Department, State of Louisiana against Laconco, Inc. for liquidated damages be and the same is hereby denied and said claim dismissed;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs be assessed against the State of Louisiana and the Military Department, State of Louisiana, in the sum of $3771.60.
AMENDED AND AFFIRMED, AND RECAST AS AMENDED.
NOTES
[1] Southern Specialties, Inc., another subcontractor on the job did not file a lien. Hence the State did not cite it to appear in the concursus proceeding. Nevertheless, Laconco, Inc. asserted a third-party claim against it; thus, it is now involved in this litigation.
[2] No mention of these subcontractors' claims has been made on appeal, nor have they appealed the trial court's judgment. Thus, the judgment is final as to them.
[3] Dub Johnson Paving Contractor, Inc., MB Heating and Air Conditioning, Inc., and the Vince Corporation did not satisfy the requirements of R.S. 38:2246, thus, they were not awarded 10% attorney's fees. Southern Specialties, Inc. did not file a lien, and as such, it was not eligible for the 10% attorney's fees provision.
[4] R.S. 38:2242 states in pertinent part:

"Any person to whom money is due for doing work performing labor, or furnishing materials or supplies for the construction ... of any public works ... may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor ... file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done. After the filing and recordation of claims, any payment made by the governing authority without deducting the amount of the claims so served on it shall make the authority liable for the amount of the claim..."
[5] R.S. 38:2246 provides:

"After amicable demand for payment has been made on the principal and surety and thirty days has elapsed without payment being made, any claimant recovering the full amount of his recorded or sworn claim whether by concursus proceeding or separate suit, shall be allowed ten percent attorney's fees which shall be taxed in the judgment on the amount recovered."