451 So.2d 72 (1984)
Claire GALLE
v.
ALLSTATE INSURANCE COMPANY, Fred and Anna Godin, National Indemnity Company, Keystone Coach Manufacturing Company of Florida, Inc., ABC Insurance Company, Read Datsun, Inc. and DEF Insurance Company.
No. CA-1380.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1984.
*73 Montgomery, Barnett, Brown & Read, Wood Brown, III, Gus A. Fritchie, III, New Orleans, for appellant-Read Datsun, Inc.
Sessions, Fishman, Rosenson, Boisfontaine & Nathan, J. David Forsyth, Kathryn J. Lichtenberg, New Orleans, for appellee-Keystone Coach Mfg. Co. of Florida, Inc.
Before CIACCIO, LOBRANO and WARD, JJ.
CIACCIO, Judge.
The issue before this court involves the exercise of in personam jurisdiction by Louisiana courts over a non-resident defendant. Exercise of that jurisdiction is authorized by the Louisiana Long-Arm Statute, La.R.S. 13:3201 et seq., and is limited by Constitutional due process constraints as set forth by the United States Supreme Court in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. Third-party plaintiff appellant has asked us to determine whether the trial court erred by maintaining third-party defendant's declinatory exception raising objections of lack of personal jurisdiction and insufficiency of service and citation. We find that the trial court did err, and, therefore, we reverse the ruling, overrule the exception and remand the case to the district court for further proceedings.
Original plaintiff, Claire Galle, was allegedly injured while riding as a guest passenger in a Datsun camper truck. In her suit to recover for her injuries she named as original defendants, among others, Allstate Insurance Company, Keystone Coach Manufacturing Company of Florida, Inc., and Read Datsun, Inc. Allstate insured the owner of the camper; Keystone modified the Datsun truck chassis and fitted it with the camper assembly; Read Datsun sold the vehicle to the initial consumer owner.
Allstate filed a third-party petition against co-defendant Keystone. Thereafter, Keystone filed a declinatory exception of lack of jurisdiction directed against the original plaintiff, Claire Galle, and third-party *74 plaintiff, Allstate. This exception was maintained and no appeal was taken.
About eight months later, Read Datsun filed a third-party petition against Keystone, who had been dismissed from the suit. Keystone again filed a declinatory exception raising objections of lack of personal jurisdiction and insufficiency of service and citation. Keystone also pleaded res judicata on the jurisdictional issue. Keystone sought to avoid litigation of the issue by whatever doctrine the court would accept to reach the desired result, i.e., res judicata, collateral estoppel or law of the case.
The district court maintained Keystone's declinatory exception. We do not find any ruling in the record on Keystone's plea of res judicata. By considering the merits of the declinatory exception, the trial court impliedly overruled this plea. Even assuming a valid and reviewable ruling by the trial court, Keystone did nothing to preserve this issue for review by this court. Because Keystone devotes a substantial portion of its appellate argument to this issue we have decided to address it.[1]
Louisiana application of the doctrine of res judicata establishes a presumption of correctness and precludes re-litigation of the object of a judgment only when there is (1) identity of the parties, (2) identity of "cause", and (3) identity of the "thing" demanded. La.C.C. Art. 2286; Braquet v. Administrators of the Tulane Educational Fund, 419 So.2d 30 (La.App. 4th Cir.1982), writ denied, 423 So.2d 1148 (La.1982), cert. denied, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 348 (1983), and cases cited therein. In the present situation the parties involved in these exceptions, viz. Keystone and Read Datsun, are not identical to the parties involved in the previous exceptions, viz. Keystone, Clare Galle, and Allstate. As a result, a plea of res judicata cannot be sustained.
Collateral estoppel is a doctrine of issue preclusion alien to Louisiana. It is a doctrine not susceptible to an orderly application in a jurisdiction utilizing civil law terminology. Consequently, the Louisiana Supreme Court has held that none of the variations of the common law doctrines of res judicata, including collateral estoppel, apply in Louisiana. Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978). Keystone cannot argue, therefore, that Read Datsun is collaterally estopped from litigating the issue of the court's jurisdiction over Keystone.
The "law of the case" principle operates merely as a discretionary guide. It does not prevent argument in cases of palpable former error. It should not be applied so mechanically as to accomplish manifest injustice. Petition of the Sewerage and Water Board of New Orleans, 278 So.2d 81 (La.1973); Babineaux v. Pernie-Bailey Drilling Company, 261 La. 1080, 262 So.2d 328 (1972). The "law of the case" principle does not prevent Read Datsun from requesting the court to recognize its jurisdiction over Keystone.
Read Datsun has appealed from the ruling maintaining the declinatory exception. Appellant relies upon Louisiana's Long Arm Statute, La.R.S. 13:3201, particularly section (d), to support the proposition that Keystone is amenable to suit in this state. The statute provides:
Sec. 3201. Personal jurisdiction over nonresidents
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
(a) transacting any business in this state;
(b) contracting to supply services or things in this state;
(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;

*75 (d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
. . . . .
The legislative intent in enacting this statute was to extend personal jurisdiction of Louisiana courts over non-residents to the full limits of due process, i.e. to any non-resident who has "minimum contacts" with this state. Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Co., 283 So.2d 687 (La.1973); Soileau v. Evangeline Farmer's Co-Op., 386 So.2d 179 (La.App. 3d Cir.1980). This jurisprudence requires a liberal interpretation of La.R.S. 13:3201 in favor of finding jurisdiction. Adcock v. Surety Research and Investment Corp., 344 So.2d 969 (La. 1977); Latham v. Ryan, 373 So.2d 242 (La.App. 3d Cir.1979).
The finding of jurisdiction over non-residents involves an evaluation of the factual circumstances of the case in light of federal constitutional principles. In order for the proper exercise of jurisdiction in personam over a non-resident there must be sufficient minimum contacts between the non-resident defendant and the forum state to satisfy due process and "traditional notions of fair play and substantial justice" as required by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), International Shoe Company v. State of Washington, supra, and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Whether or not a particular defendant has sufficient minimum contacts with a state is to be determined from the facts and circumstances peculiar to each case. Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Company, supra; Soileau v. Evangeline Farmer's Co-Op., supra.
To the extent that a corporation exercises the privilege of conducting activities within a state it enjoys the benefits and protection of the laws of the state. The exercise of this privilege carries with it a corresponding responsibility to respond to suits which are brought against the corporation as a result of its activities within the state. International Shoe Company v. State of Washington, supra. Although the degree of contact with the forum state may vary with the activities of the defendant, it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); International Shoe Company v. State of Washington, supra.
When a corporation purposely avails itself of the privilege of conducting activities within the forum state, it has clear notice that it is subject to suit there. The forum state does not exceed its powers under the due process clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
The evidence submitted both in support of and in opposition to the exception consisted of affidavits and documents attached,[2] answers to interrogatories, and any relevant documents in the record. No testimony was taken.
*76 Keystone submitted the affidavit of Gordon Cole, President of Keystone. This affidavit established the following:
(1) Keystone is a Florida corporation, and maintains its principal office and place of business in Florida.
(2) Keystone is not qualified to, and does not do business in Louisiana. It has no office or place of business in Louisiana.
(3) Keystone has no agent for acceptance of service in Louisiana, nor does it have any personnel in Louisiana.
(4) Keystone owns no property, no bank accounts, nor does it have a telephone listing in Louisiana. Consequently, it does not pay any real estate, personal property, income or other taxes in Louisiana.
(5) Keystone does not advertise or solicit business for its products in Louisiana. It does not derive substantial revenue from any goods used or consumed, or services rendered in Louisiana.
In answers to interrogatories Keystone replied: "Keystone is in the business of supplying to retail dealers camper components to be attached to the chassis of motor vehicles supplied by other entities. For the period beginning in 1979, ... Keystone has sold only one (1) camper unit to a Louisiana dealer (and that, in 1980)." Further replies indicate that since 1979 Keystone's business in Louisiana has amounted to limited and occasional filling of unsolicited orders for repair parts. Since 1979 Keystone's revenue from Louisiana sales has amounted to less than one-tenth of one percent (.001) of its total revenue.
The camper in question in this suit was sold to Read Datsun by Keystone in 1978. The affidavit of Stephen Louis Read, president of Read Datsun in 1978 and 1979, established that in 1978 Read Datsun purchased from Keystone three campers for a total purchase price of $25,784.40 ($8,594.80 each). This assertion is corroborated by invoices evidencing the sale, and is not contradicted by Keystone. The affidavit of Gayle L. Dalfeares, Jr., vice-president of Read Datsun in 1978 and 1979, repeats this same information.
The affidavits of Mr. Read and Mr. Dalfeares provide further information on how the sales from Keystone were confected, i.e.:
2. That during the summer of 1978, he [Stephen Louis Read] was contacted by an agent and/or representative from Keystone Coach Manufacturing Company of Florida, Inc. at the Read Datsun, Inc. place of business on Fifth Street in Gretna, Louisiana.
3. That the Keystone Coach Manufacturing Company of Florida, Inc., agent and/or representative reached the Read Datsun, Inc. place of business by virtue of traveling in a Datsun 620 Camper.
4. That he, Stephen Louis Read, discussed the assorted features and pricing of the Datsun 620 camper with the representative from Keystone Coach Manufacturing Company of Florida, Inc., while said representative demonstrated the various features of the 620 camper utilizing the same camper in which he was traveling as an illustration.
(5) That upon discussing the various features and pricing of the Datsun 620 camper with the representative from Keystone Coach, Stephen Louis Read decided to purchase, on behalf of Read Datsun, Inc., three of such campers from Keystone Coach Manufacturing Co. of Florida, Inc.
In 1979 the camper in question was sold by Read Datsun to a Louisiana resident.
The evidence establishes that in 1978 Keystone, through an agent or representative, purposely availed itself of the privilege of conducting business in Louisiana. The exercise of this privilege carried with it a corresponding responsibility to respond to suits which are brought against Keystone as a result of its activities within this state. We consider the revenue derived from this activity ($8,594.80 per unit) to be substantial, regardless of the ratio of this revenue to Keystone's total revenue.
Keystone delivered its products (more particularly, at least four campers, three in 1978 and one in 1980) into the stream of *77 commerce fully expecting that they would be purchased by consumers in Louisiana. In light of this conduct and connection with Louisiana, Keystone could have reasonably anticipated being haled into court here. We find sufficient contacts between Keystone and Louisiana to satisfy due process and traditional notions of fair play and substantial justice.
Throughout the proceedings below and in argument to this court, Keystone has focused upon its activities since 1979. It has argued that any prior years' activities were irrelevant as too far removed from the present suit. Keystone has relied upon its present almost non-existent contacts with Louisiana as the basis for its claim of immunity from suit here.
The present suit arises from injuries suffered allegedly as the result of defects in a product manufactured by Keystone. Keystone's connection with this product, its introduction into Louisiana commerce and Keystone's contacts with Louisiana around the time of the product's entrance into the stream of commerce are the activities which must be considered in determining whether Keystone is amenable to the jurisdiction of the Louisiana courts. We find, after considering this information, that Keystone is subject to the jurisdiction of the Louisiana district court.
Keystone also excepted to the sufficiency of service and citation. We have searched the record and find that it does not contain evidence concerning this issue. Further, the elements of this issue were not argued either in memorandum to the district court or in brief to this court. We find it necessary, therefore, to remand this matter to the district court for a hearing on the issue of sufficiency of service of process and citation.
Accordingly, we hold that for the purposes of this lawsuit Keystone Coach Manufacturing Company of Florida, Inc., if properly served and cited, is subject to the personal jurisdiction of the Louisiana district court. The ruling of the district court maintaining Keystone's exception asserting lack of personal jurisdiction is reversed and the exception overruled. As to that part of Keystone's exception asserting insufficiency of service and citation, we vacate the judgment of the district court and, as noted above, remand for a hearing on this issue.
REVERSED IN PART, VACATED IN PART, AND REMANDED.
NOTES
[1] If Keystone desired to raise this issue directly in this court, it could have properly filed an exception here. See La.C.C.P. Art. 2163.
[2] Keystone filed a "Motion to Strike Affidavit and Deposition" attacking the evidence submitted by Read Datsun. The record before us does not indicate how, or even if, the trial court ruled on this motion. Since the motion sought to exclude this evidence from consideration by the court in ruling on the exception, we assume that the trial court impliedly denied Keystone's motion when it ruled on the exception after indicating having considered all of the evidence. Even assuming a valid reviewable ruling by the trial judge, Keystone did nothing to preserve this issue for review by this court.