GRISBAUM, Judge.
This is an appeal from the trial court’s granting a declinatory exception of lack of personal jurisdiction of the third-party defendant, Cemcel Corporation (Cemcel) under our Louisiana long arm statute 13:3201. We affirm.
The plaintiff, Severn South Partnership, commenced this proceeding claiming damages to its building, The Bank of the South, located on Severn Avenue in Metairie, Loui *88 siana, alleging various defects in construction caused by acts of negligence and breaches of contract by the architect, the general contractor, and its surety, as well as an engineering firm. The suit is in the nature of a claim for damages based upon redhibitory defects and vices. In due course, the general contractor, Stanley D. Fejta, d/b/a Aecon Company (Aecon), named various parties as third-party defendants, including Cemcel, which Aecon seeks to hold liable for any amounts recovered by the plaintiff for damages due to water leaks in the skylights and windows of the building, which skylights Cemcel manufactured.
Cemcel was served by certified mail under the long arm statute, Louisiana Revised Statute 13:3201. Cemcel excepted to the court’s jurisdiction on the basis that it was a foreign corporation, not amenable to personal jurisdiction based upon insufficient minimal contacts with Louisiana. The trial court granted the declinatory exception and dismissed this third-party defendant from the suit.
The sole issue is whether the State of Louisiana has jurisdiction over Cemcel Corporation pursuant to the Louisiana long arm statute and in accordance with due process of the United States Constitution.
In the recent case of Green v. Luxury Auto Rentals, Limited, 422 So.2d 1365, 1367 (La.App. 1st Cir.1982), in citing Soileau v. Evangeline Farmer’s Co-Op, 386 So.2d 179 (La.App.3d Cir.1980), the court restated the proper application of Louisiana Revised Statute 13:3201 as follows:
It is well settled that the legislative intent in enacting this statute was to extend personal jurisdiction of Louisiana courts over non-residents to the full limits of due process, i.e., to any non-resident who has ‘minimum contacts’ with this state. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La.1973), and Aucoin v. Hanson, 207 So.2d 834 (La.App. 3d Cir.1968). This jurisprudence requires a liberal interpretation of LSA-R.S. 13:3201 in favor of finding jurisdiction. Adcock v. Surety Research & Inv. Corp., 344 So.2d 969 (La.1977); Latham v. Ryan, 373 So.2d 242 (La.App. 3d Cir.1979).
The finding of jurisdiction over nonresidents involves an evaluation of the factual circumstances of the case in light of federal constitutional principles. In order for the proper exercise of jurisdiction in personam over a non-resident there must be sufficient minimum contacts between the non-resident defendant and the forum state to satisfy due process and ‘traditional notions of fair play and substantial justice’ as required by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Whether or not a particular defendant has sufficient minimum contacts with a state is to be determined from the facts and circumstances peculiar to each case. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La.1973).
It is undisputed that in June of 1980, representatives of Tri-Clad South, Inc., a Louisiana corporation located in Orleans Parish, contacted Cemcel in California and solicited a quotation for the purchase of the skylight materials. As a result of the solicitation by Tri-Clad, Cemcel submitted, on June 16, 1980 by mail, a quotation to TriClad for the material F.O.B. at Cemcel’s place of business in California. Later, TriClad prepared and mailed to Cemcel a purchase order 736-C dated June 25, 1980 which had been forwarded from Aecon to Tri-Clad. At no time were there any direct communications between Cemcel and Ae-con regarding the negotiation of the sale, but rather, Aecon dealt with Tri-Clad who had initiated contact and solicited the purchase. In accordance with the instructions in Tri-Clad’s transmittal of June 2, a Cem-cel representative signed the purchase order in California, returned it by mail to *89 Aecon and Tri-Clad, and then began fabrication of the order. Ultimately, the materials were shipped in two lots with Aecon prepaying all freight charges to Louisiana. Thus, the sales contract was perfected in California when Cemcel representatives signed the purchase order. Furthermore, the materials were accepted in California where Aecon constructively took possession inasmuch as all shipping was done specifically at the direction and the cost of Aecon.
Aecon contends that Tri-Clad South, Inc. acted as an agent of Cemcel Corporation or, in the alternative, as a broker between Aecon and Cemcel; however, Aecon wholly failed to prove an agency relationship between Cemcel and Tri-Clad South, Inc.
The record reveals Cemcel is a California corporation with its principal place of business in Greenbrae, California. It is in the business of manufacturing various architectural products, including the Cemcel Insulating Sandwich Panel Skylight, which was ultimately to be used in the construction of The Bank of the South. Cemcel alleges, and it is undisputed, that it has never qualified to do business in Louisiana, nor has it ever appointed any agent for service of process in the state. Cemcel further maintains that no Cemcel salesmen, licensees, franchisees, agents, or employers have ever been located in Louisiana, and the company has never maintained an office or place of business here. Moreover, Cemcel claims it has never advertised or solicited business in Louisiana nor has it ever maintained any agent or representative here for the purpose of soliciting business. Cemcel alleges it has never received substantial revenue from doing business in Louisiana, and there is no evidence to the contrary in the record. As far as profits from the sale of the skylight materials which were ultimately used in the construction of The Bank of the South, Cemcel claims it derived a profit of merely $1000; the sale was for approximately $11,000.
Our review of the transactions between the parties leads us to conclude that Cem-cel did not actively avail itself of any benefits of our state. In accordance with our statutory law and our jurisprudential guidelines, we cannot say the isolated transaction herein constitutes sufficient minimum contact betwe'en Cemcel and Louisiana to satisfy due process and traditional notions of fair play and substantial justice. See, Growden v. Ed Bowlin & Associates, Inc., 733 F.2d 1149 (5 Cir.1984); Talbot Tractor Company, Inc. v. Hinomoto Tractor Sales, USA v. Kanematsu-Gosho, (U.S.A.) Inc., 703 F.2d 143 (5 Cir.1983); Charia v. Cigarette Racing Team, Inc., 583 F.2d 184 (5 Cir.1978); and Benjamin v. Western Boat Building Corporation, 472 F.2d 723 (5 Cir.1973). Accordingly, we hold that our Louisiana courts cannot exercise personal jurisdiction over Cemcel.
For the reasons assigned, the judgment of. the trial court is affirmed; all costs of this appeal are to be assessed against the appellant.
AFFIRMED.