490 So.2d 674 (1986)
McBEAD DRILLING COMPANY, et al., Plaintiffs-Appellants,
v.
KREMCO, LTD. et al., Defendants-Appellees.
No. 17892-CA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
Goff & Goff by A. Kennon Goff, III, Ruston, for plaintiffs-appellants.
Cook, Yancey, King & Galloway by Charles G. Tutt, Shreveport, for defendant-appellee The Dickirson Equipment Corp.
Before HALL, JASPER E. JONES and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiffs, McBead Drilling Company (McBead) and Northwestern National Insurance Company appeal the trial court judgment dismissing their claims against the defendant, the Dickirson Corporation (Dickirson). The trial court sustained Dickirson's exception of lack of personal jurisdiction after the matter was submitted to the court on briefs, with other evidence also submitted in support of the exception. We affirm the trial court's judgment.
The plaintiffs instituted this suit on December 3, 1982 when they filed a petition alleging that the following defendants were solidarily indebted for the loss of revenues and other damages arising from the collapse of an oil rig. The named defendants included KREMCO, Ltd., KREMCO, Inc., the Dickirson Corporation, Dickirson Equipment Corporation, National Union Fire Insurance Company, DRECO, Inc., DRECO Energy Services, Ltd.
*675 McBead, a corporation domiciled in the state of Arkansas, with its principal place of business there, purchased the subject KREMCO K600 Rotary Drilling Rig for $658,680 from Dickirson, a corporation domiciled in West Virginia. The rig was delivered to McBead's yard in southern Arkansas in late October or early November, 1981. The rig was then moved by McBead to Louisiana for drilling operations in this state. On December 3, 1981, the rig suddenly collapsed while in normal use in Caddo Parish, Louisiana. In their petition, plaintiffs alleged that design and structural defects were the cause of the rig's collapse.
Two defendants, Dickirson and Rainwater Oilfield Equipment Company (Rainwater) filed "peremptory" exceptions of lack of personal jurisdiction.[1] Rainwater had operated as Dickirson Equipment Corporation until the name was changed in April, 1982. Other defendants named in the suit made general appearances and the case is now pending, awaiting the outcome of this appeal.
After reviewing the briefs and other evidence submitted by the parties, the trial court in a written opinion, granted the exceptions of both Dickirson and Rainwater. The plaintiffs moved for a rehearing contending that the trial court had failed to consider certain amended provisions of the Louisiana Long Arm Statute, LSA-R.S. 13:3201, et seq., in arriving at its initial opinion. The trial court, however, denied the plaintiff's motion stating that it would not apply the 1984 amendments to the Long Arm Statute in the instant case. The court noted that those provisions were not in effect at the time the alleged loss occurred or at the time this suit was filed. A final judgment dismissing the plaintiffs' claims against the two defendants was signed on August 30, 1985 and filed September 3, 1985. The plaintiffs filed a timely devolutive appeal from this judgment rendered in favor of Dickirson Corporation.[2]
Although the trial court was incorrect in concluding that the 1984 Amendments to the Long Arm Statute were not to be applied retroactively, we affirm the court's decision, finding that the assertion of personal jurisdiction over this defendant would have been violative of constitutional due process requirements.
The trial court in this case found that the only provision of LSA-R.S. 13:3201 applicable at the time of the alleged loss and at the time suit was filed, was subparagraph (d). The trial judge noted that this paragraph provided:
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's (d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state[.]
In 1984, several amendments were enacted with respect to this statute, including the deletion of the word "substantial" from the paragraph above, and the addition of a new subparagraph, so that the statute presently contains the following language:
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident: (8) Manufacturing of a product or component *676 thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.
The language of the paragraph noted directly above, would appear to address the situation at hand, if this amendment could be applied retroactively to encompass the facts of this case. In Nelson v. Continental Casualty Company, 412 So.2d 701 (La. App. 2d Cir.1982), writ denied 413 So.2d 507 (La.1982), the court noted that the general principle of nonretroactivity of law is expressed in LSA-C.C. Art. 8 which provides:
A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts.
Although LSA-R.S. 1:2 also provides that no statute is retroactive unless it is expressly so stated, this court recognized that there are exceptions to the rule of nonretroactivity, observing that many cases have noted that interpretive, remedial, curative, or procedural laws are generally accorded retroactive application. See e.g. Green v. Liberty Mutual Insurance Company, 352 So.2d 366 (La.App. 4th Cir. 1977), writ denied 354 So.2d 210 (La.1978); Morrison Food Service, Inc. v. Cohen, 376 So.2d 182 (La.App. 4th Cir.1979). In Dripps v. Dripps, 366 So.2d 544 (La.1978), the Louisiana Supreme Court revealed the following:
The general interest, which is here but the aggregate of individual interest, therefore requires that what has been done regularly under the aegis of the law, be considered valid, and consequently, that it remain stable, even after a change in the legislation. Planiol, Vol. 1, No. 240, Treatise on The Civil Law (12 ed. 1939).
Although well-established, the principal of non-retroactivity is subject to exceptions.
Some changes in the law are applicable to all situations, past, present and future. Laws which determine jurisdiction and procedure are applicable, from the date of their promulgation, to all law suits, even to those which bear upon facts and acts of a prior date. They even apply to pending law suits as the decisions already cited demonstrate. The laws are remedial in character concerned with procedure, not substantive rights. They do not impair the obligations of contracts. Planiol, Vol. 1, No. 258.
LSA-R.S. 13:3201 specifically addresses the issue of personal jurisdiction. Therefore, it is a procedural law and as such, should be applied as of the date of its promulgation to "all lawsuits, even those which bear upon facts and acts of a prior date." As noted in Harrell v. Military Department, 457 So.2d 314 (La.App. 3d Cir.1984), an amendment to a procedural law will be given retroactive application in the absence of language showing a contrary intent. Fullilove v. U.S. Casualty Company of New York, 129 So.2d 816 (La. App. 2d Cir.1961).
Further support for the retroactive application of this amendment is found in Coreil v. Pearson, 242 F.Supp. 802 (W.D.La.1965). In that case, the U.S. District Court faced the issue of determining whether LSA-R.S. 13:3201, et seq., was a statute of remedial and procedural import and effect or whether it was substantive. Finding that this issue was res novo at that time, the court, citing cases addressing similar procedural laws which were given retrospective operation in the absence of a clearly expressed legislative intent to the contrary, concluded that the Long Arm Statute was procedural and remedial in nature and should be given retroactive effect.
As noted above, the facts of the instant case provide an appropriate background for the retroactive application of the amendments to LSA-R.S. 13:3201. The defendant, Dickirson Corporation, although not *677 the primary manufacturer of the drilling rig in question, participated in the construction and design of the final product to be delivered to McBead, in accordance with McBead's specifications. Dickirson, as the vendor of the rig, became a primary distributor of this rig, initiating its placement into the "stream of commerce." See Bean Dredging Corporation v. Dredge Technology Corporation, 744 F.2d 1081 (5th Cir. 1984). Dickirson could have forseen, due to the nature of the product in question, a mobile drilling rig, which was sold to a drilling company in southern Arkansas, that it was not improbable that the drilling rig would eventually be found in an oil producing area of this state.
However, the determination that the facts of the instant case fall within the ambit of the provisions of LSA-R.S. 13:3201 is not decisive of the inquiry as to whether in personam jurisdiction may be asserted over this defendant. As noted in Galle v. Allstate Insurance Company, 451 So.2d 72 (La.App. 4th Cir.1984) the exercise of in personam jurisdiction is authorized by the Louisiana Long Arm Statute LSA-R.S. 13:3201, et seq., but it is limited by Constitutional due process constraints as set forth by the United States Supreme Court in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.
In Robinson v. Vanguard Insurance Company, 468 So.2d 1360 (La.App. 1st Cir. 1985), writs denied 472 So.2d 34 (La.1985), 472 So.2d 924 (La.1985), the court noted that in determining whether Louisiana has personal jurisdiction over a nonresident foreign corporation, a dual inquiry must be made. (1) Does the Louisiana Long Arm Statute provide for the assertion of jurisdiction in the context of the facts of the case; and (2) is the assertion of jurisdiction by Louisiana constitutionally permissible, that is, will the exercise of personal jurisdiction over the defendant be consonant with "traditional notions of fair play and substantial justice" and did the defendant have sufficient "minimum contacts" with Louisiana to satisfy due process? Pedelahore v. Astropark, Inc., 745 F.2d 346 (5th Cir.1984).
The Louisiana Supreme Court in Fryar v. Westside Habilitation Center, 479 So.2d 883 (La.1985) noted that Louisiana's Long Arm Statute was intended to encompass the maximum jurisdictional outreach allowable under the United States Constitution. The Court noted:
The basic due process requirement for jurisdiction over a person is minimum contacts with the forum state. International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). An individual is not subject to the jurisdiction of a forum with which he has established no "contacts, ties or relations" International Shoe Company v. Washington, 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104. The contacts with the forum state cannot be "isolated", fortuitous", or "attenuated". There must be a substantial connection between the defendant's activities and the forum state, but physical entry into the forum state is not essential. Burger King Corp. v. Rudzewicz, 471 U.S. ___, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)....
A person must have fair warning that an activity may subject him to foreign jurisdiction. Burger King, supra. This allows a potential defendant some assurance as to where he will be liable to suit. World-Wide Volkswagen Corporation v. Woodson, supra; Burger King, supra. The requirement of fair warning is satisfied when a defendant has purposefully directed his activities at a resident of the forum, and the litigation results from forseeable injuries arising out of or relating to those activities. International Shoe, supra; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d. 404 (1984); Burger King, supra....
When minimum contacts are present, they must be balanced with other factors to determine whether personal jurisdiction affords substantial justice, is reasonable and compatible with fair play. International Shoe Company v. Washington, *678 supra; Schaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); World-Wide Volkswagen Corporation v. Woodson, supra; Burger King, supra; Restatement (2d) of Conflict of Laws, §§ 36, 37 (1971). Factors to be evaluated include the burden on the defendant, the forum state's interest, the plaintiff's interest, the system's interest in obtaining the most efficient resolution of controversies, and the furtherance of fundamental substantive social policies. World-Wide Volkswagen Corp. v. Woodson, supra; Burger King, supra.

In Severn South Partnership v. Kearney, 465 So.2d 87 (La.App. 5th Cir.1985), these constitutional requirements as set forth in the above cases were further explained by the Fifth Circuit Court of Appeal, noting that whether "or not a particular defendant has sufficient minimum contacts with a state is to be determined from the facts and circumstances peculiar to each case. Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La.1973)." In that case the defendant, a California corporation, Cemcel, had been contacted by a Louisiana corporation who solicited a quotation for the purchase of skylight materials. Cemcel submitted by mail a quotation to the Louisiana corporation, which in return mailed to Cemcel a purchase order for such materials. The sales contract which was perfected in California and the materials were accepted there. The court noted that the defendant was never qualified to do business in Louisiana, nor had it ever appointed an agent for service of process in this state. The court noted further that the defendant maintained that no salesmen, licensees, franchisees, agents or employers had ever been located in Louisiana and that the company had never maintained an office or a place of business here. The company also had never sent any agent or representative here for the purpose of soliciting business and had never received substantial revenue from doing business in Louisiana. The court concluded that Cemcel had not actively availed itself of any benefits of this state and that in accordance with the statutory law and jurisprudential guidelines, the court could not hold that this isolated transaction constituted sufficient minimum contact between Cemcel and Louisiana to satisfy due process and traditional notions of fair play and substantial justice.
In Green v. Luxury Auto Rentals, Ltd., 422 so.2d 1365 (La.App. 1st Cir.1982), the First Circuit Court of Appeal held that the "isolated transaction" in that case, as well, did not constitute "sufficient minimum contacts between the defendant and Louisiana to satisfy due process and traditional notions of fair play and substantial justice," and therefore Louisiana could not exercise personal jurisdiction over the defendant.
In that case, the defendant, a Georgia limited partnership, leased an automobile for use in Louisiana. The purchase agreement was signed in Atlanta and all of the negotiations took place there or were over the telephone. One of the plaintiffs also picked up the car in Atlanta. The court noted that the only contacts with Louisiana were the use of the vehicle in this state and the fact that a representative of the defendant picked up the car in Louisiana. The court also noted that there was no indication in the record that the defendant had ever before leased a vehicle for use in Louisiana.
The court found that the circumstances of the case did not lead to a conclusion that this situation fell within the outline of the Long Arm Statute. The court concluded that the defendant had not transacted any business in Louisiana and stated that it did not agree with the plaintiffs' contention that the defendant's actions were covered by other provisions of the statute.
With respect to the facts of the instant case, we find that there are insufficient contacts with this state to properly assert in personam jurisdiction over this defendant. The record reveals the following factors regarding the contacts made by the defendant with this state. Prior to 1981, a salesman while on personal errands in Louisiana, made a few attempts to contact *679 Louisiana companies with respect to the purchase of trucks from Dickirson, not drilling rigs. Also, approximately one week before the collapse of the drilling rig in question, the defendant sent a field service representative at the plaintiff's request to the rig to change a hydraulic pump, a warranty item the defendant was required to perform. This was the service representative's first time to do any type of work in Louisiana and he would have been the only person to service this area for Dickirson. There was other testimony to the effect that no other personnel had travelled to Louisiana nor had any advertising been undertaken in an effort to solicit business in Louisiana. The factors ennunciated above were the only positive assertions made by this defendant with respect to the jurisdiction of this state.
We find that such contacts are not sufficient to satisfy due process. The mere fact that defendant took part in manufacturing a product that made its way into Louisiana by the efforts of McBead, does not alone render it subject to the jurisdiction of our courts. As noted by the United States Supreme Court in World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980):
[T]he mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Hanson v. Denckla, supra, [357 U.S. 235] at 253, 78 S.Ct. [1228] at 1239-1240 [2 L.Ed.2d 1283 (1958)].
The fact that the defendant participated in the sale of one rig to an Arkansas corporation which was responsible for the placement of the rig in Louisiana is not indicative of a sufficient connection with this forum state such that the defendant should "reasonably anticipate being haled into court" here. Worldwide Volkswagen Corporation vs. Woodson, supra. Therefore, under the facts established in this case, we find that because there were insufficient contacts with this state by the defendant, that there is a constitutional barrier to the use of the Louisiana Long Arm Statute to obtain jurisdiction over this defendant. The requirements of due process and the "traditional notions of fair play and substantial justice" have not been satisfied.
Accordingly, for the foregoing reasons, the trial court's decision determining that there is no personal jurisdiction over this defendant is affirmed.
AFFIRMED.
NOTES
[1] It is noted that such an exception is properly classified as a declinatory exception. See LSA-C.C.P. Art. 925(5).
[2] It is noted that the plaintiffs in brief have couched their arguments in terms of the rejection of their claims against "Rainwater Oilfield Equipment Company, formerly d/b/a Dickirson Equipment Corporation." The trial court dismissed the plaintiffs' claims against Rainwater, finding, on the basis of the evidence submitted, that the former Dickirson Equipment Corporation, was not in any way involved in the sale of the subject rig. We acknowledge, however, that the plaintiffs' arguments are focused against the true seller of the rig, Dickirson Corporation.